181 P.2d 822

WHITSON v. STATE.

No. 972.

Supreme Court of Arizona.

June 9, 1947.

V. L. Hash and J. Frank Gibson, both of Phoenix, for appellant.

John L. Sullivan, Atty. Gen., John W. Rood, Asst. Atty. Gen., and Francis J. Donofrio, County Atty., and James J. Caretto, Deputy County Atty., both of Phoenix, for appellee.

UDALL, Justice.

The defendant, in an information containing two counts, was charged with robbery and grand theft. The jury returned a verdict of guilty upon both counts and defendant has appealed from the final judgment of conviction and the court's denial of his motion for a new trial. Defendant's wife, Margaret Sugg Whitson, signed the criminal complaint and was the only witness against her husband to testify at the trial.

■ At the outset it is clear that a husband, having the requisite felonious intent, may be guilty of robbery and grand theft of the separate property of his wife. This is possible because of the abrogation of the common law unity of husband and wife in regard to their separate properties brought about by the so-called "Married Women's Act", Sec. 63-303, A.C.A.1939. It would be contrary to reason that this statute should provide that 'Married women shall have the sole and exclusive control of their separate property * * *" if it was intended that a husband could ad libitum appropriate this property. In Eshom v. Eshom, 18 Ariz. 170, 157 P. 974, this court has already upheld the right of a wife in a civil case to a cause of action against her husband for conversion of her separate property. See also State v. Herndon, Fla. 27 So.2d 833.

■ There are four assignments of error, the first of which arises from the voir dire examination of the jury wherein the following was said:

"Mr. Caretto: Very well. Ladies and gentlemen of the jury, the persons involved in this trial are husband and wife, or were at the time of this transaction, and I was just wondering if that fact would make any difference in your decision, the fact that they were married, if you would require less proof on the part of the State than you would if they were strangers—

"Mr. Hash: If your Honor please, it occurs to me that it might make a vast difference. There might be a legal difference.

"The Court: No, there is no legal difference. I will so state to the jury right now. It is alleged in this information that the property taken was the separate property of Margaret Whitson. I believe that is the information, isn't it?

"Mr. Caretto: Yes.

"The Court: By her husband. He is just as guilty of the theft of it as if it was your property, as a matter of law, if he took the property without her consent."

The defendant contends that the court erred in its statement of law as set forth above for the reason that it failed to advise the jury that to constitute the crime of larceny or theft there must be present the element of felonious taking of the property with the intent permanently to deprive the owner of its possession and use; that mere taking without the consent of the owner is alone insufficient to constitute these crimes. While the latter is a correct statement of the law it does not necessarily follow that error was committed by the court. Any possibility of error here was corrected in the next question directed to the entire jury panel: "The Court: Would you require any more proof in a case of this kind than you would if it were someone who was not the wife of the defendant? Of course, *all the elements of theft must exist before you can find the defendant guilty, regardless of whom the property may belong to.*" (Emphasis supplied.)

In addition, the court, in outlining the nature of the case to the jury but a few moments before, had said that the information charged defendant with having performed these acts "willfully, unlawfully and feloniously". Most surely it is not essential that the court in passing upon objections or in making some comment must precisely define all essential elements of an offense each time reference is made thereto. It is significant that no error is assigned to any part of the court's closing charge to the jury wherein the law describing and governing these offenses was fully and correctly declared. We hold there is no merit to this assignment.

■ Assignments of error numbers two and three have to do with the refusal of the court to direct a verdict of acquittal on each count for the reason that the evidence wholly fails to support the allegations of the complaint. In view of the disposition of this appeal on other grounds, there is no necessity of detailing the facts. Suffice it to say that from a careful reading of the testimony given at the trial we conclude that there was ample evidence to justify defendant's conviction upon both of these counts. The trial court committed no error in refusing to instruct a verdict for defendant.

Defendant's assignment of error number four is the crucial one to be here considered. This assignment is to the effect that defendant was not awarded a trial by an impartial jury as guaranteed by Article 2,

Section 24 of the Constitution of the State of Arizona. It is based upon the undisputed testimony that one Fred Kruse (who was a brother of defendant's first wife, and who was available as a rebuttal witness for the State), knowing Cora Seitz to be a juror in the case, joined her for lunch at a noon recess during the latter part of the trial. He told her, during the course of the luncheon conversation, that the defendant was his ex-brother-in-law; that he had deserted his first wife (Kruse's sister) in Oklahoma City without money two days prior to her giving birth to a child, and that she subsequently committed suicide as the result of the shock of receiving a telegram to the effect that defendant was being criminally prosecuted. Although there is no testimony concerning what Cora Seitz said to Kruse upon receipt of this information to indicate what her immediate reaction was (she having denied that she said anything at all), she did testify that Kruse was a good friend of her husband; that she had been introduced to him by her husband but a few days before, and that she had no reason to believe that what he told her was other than the truth. Cora Seitz did not communicate any of this information to the other jurors until after the trial was over and the verdict rendered. But any doubt as to whether or not she was deeply impressed with the information learned from Kruse is dispelled by the undisputed testimony of another juror, Florence Kleeman, as to what Cora Seitz told her as they left the court room immediately

after the trial: "* * * she said, 'Well, I don't think we decided it wrong.' She said, 'I think we gave the right decision, because, she said, 'He was a bad egg.' She said, 'He left his wife just two days before her baby was to be born, and then his wife committed suicide.' Now that is the way I understood it. I was just in a hurry, you know, going. And she said he also was a robber. I think she said he robbed in Oklahoma and was in prison five years, and he also was a check forger, and I turned and I said, 'Well, how do you know all this?' And she said 'Well, I found out.' And that is all I can remember."

 It is true that great weight must be given to the ruling of the trial court on the question of granting or denying a motion for a new trial because of alleged misconduct of a juror. And the appellate court will not interfere with a matter so peculiarly within the knowledge of the trial judge unless an abuse of discretion exists. People v. Currie, 3 Cal.App.2d 31, 39 P.2d 215; State v. Cray, 31 N.D. 67, 153 N.W. 425. But the law is clear that communications between third parties or witnesses and jurors will be closely scanned. And if such communications refer to the case and have a tendency to color the mind of the juror in such a way as to make impossible a fair and impartial trial and are thus prejudicial to the complaining party, a new trial should be granted. 2 Thompson on Trials, 2d Ed., secs. 2553, 2554; 8 Wigmore on Evidence, 3d Ed., sec. 2354; 46 C.J.

New Trial, secs. 91, 92; 39 Am.Jur., New Trial, secs. 100, 101; People v. Strause, 290 Ill. 259, 125 N.E. 339, 22 A.L.R. 254; Puckett v. Com., 200 Ky. 509, 255 S.W. 125, 34 A.L.R. 103; State v. Demars, 101 Vt. 229, 143 A. 311, 62 A.L.R. 1466; Rent-A-Car Co. v. Globe & R. F. Ins. Co., 163 Md. 401, 163 A. 702, 86 A.L.R. 928; Young Chung v. State, 15 Ariz. 79, 136 P. 631; Rain v. State, 15 Ariz. 125, 137 P. 550; Ewers' Adm'r v. National Imp. Co., C.C., 63 F. 562; Sunderland v. United States, 8 Cir., 19 F.2d 202. And it is equally clear that the juror in question is in no position to be sole judge of whether or not he was thereby influenced or prejudiced. Pool v. Chicago & Q. Railroad, C.C., 6 F. 844.

 In the case at bar the defendant, possibly by reason of his previous criminal record, elected not to take the witness stand and testify in his own behalf. Our statute, sec. 44-2704, gives him this right, and the court properly instructed the jury that they must not consider his failure to testify in arriving at its verdict. Yet, in a highly reprehensible manner, one juror was not only apprised that defendant was a felon but other more damaging information elaborating on this fact was poured into her ear.

Had these highly inflammatory and prejudicial statements been made to the jury as a whole there could be no question but what a new trial would have been granted. Does the fact that only one juror was thus

contaminated make them innocuous? We think not. The constitutional right to an impartial jury cannot be made to hinge upon the number of jurors thus prejudiced. There is no right more sacred than the right to a fair and impartial trial. There is no wrong more grievous than the negation of that right. Nor can such misconduct be cured by the State's contention that a conviction would have resulted anyway by reason of the strength of the State's case. Although but one ballot was taken by the jury in arriving at its verdict, still that verdict had to be unanimous. It is possible that without the information improperly received, juror Cora Seitz might have voted for acquittal.

The judgment is reversed and the case remanded for a new trial.

STANFORD, C. J., and LAPRADE, J., concurring.