**UNITED STATES of America, Appellee,**

v.

**Columbus Lee PHILLIPS, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Larry Lee PHILLIPS, Appellant.**

**Nos. 77–2797, 77–2554.**

United States Court of Appeals, Ninth Circuit.

April 18, 1978.

---

Earl Terman (argued), John P. Moran (argued), Phoenix, Ariz., for appellants.

Dale Danneman, Asst. U. S. Atty. (argued), Phoenix, Ariz., for appellee.

Before TRASK and KENNEDY, Circuit Judges, and CURTIS,* District Judge.

KENNEDY, Circuit Judge:

The appellants Larry and Columbus Phillips were each indicted on one count of theft from an interstate shipment in violation of 18 U.S.C. § 659. Columbus Phillips was indicted under the same statute on a second count for concealment of stolen chattels. They were tried together, and the jury found them guilty on all counts. We find the defendants were prejudiced by the prosecution's failure promptly to inform the court and defense counsel that it would seek to reopen its case because a government witness, who had lied on the stand, was prepared to recant his testimony. We reverse the conviction.

The Government's case was that the defendants had stolen a truckload of wood paneling from a parking lot and had unloaded it in the corner of a lumber yard. The owner of the lumber yard had a son, age 17 years. The boy saw (or did not see—that was a key issue) the defendants unloading the paneling. In an interview with FBI agent Sanderson before the trial, the boy stated he had seen the defendants driving the truck and unloading the wood paneling. Agent Sanderson's written report of the interview was available to the prosecutor and defense attorneys.

The prosecution called the boy as a witness during its case in chief. He testified that the first time he saw the appellants was on Sunday afternoon when he helped them stack the paneling in the yard. He would not testify, as he had stated previously in the FBI interview, that he saw the appellants drive the truck and unload the stolen paneling earlier on that Sunday morning. On cross-examination, defense counsel chose not to impeach the witness with the prior statement, undoubtedly because the trial version tended to benefit the defense case.

Other prosecution evidence was presented, and the Government rested at the close of the first trial day. That evening agent Sanderson went to the boy's home. The witness confessed to lying on the stand out of fear for his father, who allegedly had been threatened by persons connected with the defendants. The witness also talked by telephone to the United States attorney later that evening.

Counsel met in the judge's chambers on the next morning to review jury instructions before court reconvened. Defense counsel stated that he anticipated calling the defendant Larry Phillips to the stand to testify on his own behalf. The prosecutor made no mention of the conversations with his witness.

When the trial resumed, defense counsel made an opening statement, saying that he would call defendant Larry Phillips, who would testify that the boy's father, who owned the lumber yard, was the guilty party. There was a recess and the prosecution again conferred with the boy, and advised him that given the posture of the case, his father might be prosecuted for the crime. The witness agreed to recant the earlier testimony and testify that he had seen the defendants unloading the truck on Sunday morning.

Outside the presence of the jury, the prosecution moved to reopen its case to allow the witness to clarify his testimony.

---

* Honorable Jesse W. Curtis, United States District Judge for the Central District of California, sitting by designation.

The defendants objected. The trial court ruled that if the boy's testimony were not given upon a reopening of the prosecution's case, it would be allowed in rebuttal. Defense counsel proceeded with their case, but, contrary to the representations made in the opening statement, Larry Phillips did not testify. Instead, their case consisted solely of an examination of agent Sanderson. After the defense rested, the boy again took the stand, recanted his prior testimony, and testified consistently with the statement originally given to agent Sanderson. In response to questions from the prosecutor, the boy stated that he had testified falsely when he was first called because he had heard that threats were being made against his father. A motion of defense counsel for mistrial was denied. The jury returned its verdict of guilty.

 A motion to reopen a case should be made with the diligence necessary to eliminate prejudice to the opposing party, or, if prejudice is unavoidable, to keep it to a minimum. *See Fernandez v. United States*, 329 F.2d 899, 903 (9th Cir.), *cert. denied*, 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40 (1964); *Eason v. United States*, 281 F.2d 818, 822 (9th Cir. 1960). We do not think the prosecutor exercised the required diligence here.

The Government knew on the evening of the first trial day, if indeed it did not know even while he was on the stand, that the principal witness had lied. From the record it is apparent that by reason of the witness' age and probable willingness to avoid falsely implicating his father in a crime, he would be amenable to correcting his false testimony. The prosecution did not inform the court or defense counsel of the Government's conversations with the witness, although there was ample opportunity to do

so before the trial resumed. It appears from the record that the prosecution was perfectly willing to base its case on the perjured testimony until counsel presented a formidable sounding defense in the opening statement. Although the prosecutor had learned in chambers that the defense would call Larry Phillips, he waited until after the defense opened before making final arrangements with the witness to recant the testimony and before advising the court and opposing counsel of a motion to reopen the case. This put the defendants in the untenable position of having promised to the jury that which they could no longer deliver.[1]

 The prosecution is not foreclosed by a defendant's opening statement from changing its strategy, consulting further with its principal witnesses, or requesting the court to exercise its discretion to reopen the case in chief. The prosecution may not, however, where its witnesses have testified inaccurately, form the essentials of a plan to reopen its case and delay disclosure of that plan to the court and to the defense if this induces the defense to adopt an unfavorable strategy in presenting its own case. While we are not prepared to say, without benefit of more specific findings, that what occurred here constitutes misconduct, it would appear that the prosecutor's ethical reflexes operated too slowly that day. The lack of diligence in failing to announce the plan to reopen the Government's case until after the defense opening statement was prejudicial to the defendants. *See Eason v. United States, supra.*

The trial judge expressed great concern about the matter and offered the defendants the option of permitting the case to be reopened immediately or of reserving the witness' revised testimony for the Government's case on rebuttal. Neither choice

---

1. The cases which hold that it is prosecutorial misconduct for the Government to acquiesce in perjured testimony are not applicable here, although there was a latent potential for misconduct each time the witness took the stand. The witness lied when he first testified, but his false statements were exculpatory, not incriminating. Furthermore, defense counsel, who had the FBI reports, were fully aware of the discrepancy. When the witness testified the second time, although the prosecutor had applied pressure to him, this matter was developed on cross-examination and fully disclosed to the jury. *Cf. United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *United States v. Butler*, 567 F.2d 885 (9th Cir. 1978).

offered the defendants a realistic chance to avoid the prejudice caused by their having given an opening statement to the jury that was based on a false assumption caused by undue prosecutorial delay. The defense ultimately moved for mistrial and the court should have granted that motion. *See United States v. Jackson*, 418 F.2d 786 (6th Cir. 1969).

REVERSED.