## EVELYN T. KNIGHT *v.* STATE OF MARYLAND

[No. 734, September Term, 1978.]

*Decided March 12, 1979.*

The cause was argued before GILBERT, C. J., and LOWE and MELVIN, JJ.

*Phillip M. Sutley,* with whom were *Sutley & Marr* on the brief, for appellant.

*Alice G. Pinderhughes, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A.*

*Swisher, State's Attorney for Baltimore City,* and *Jonathan Shoup, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

We herein reverse and remand to the Criminal Court of Baltimore its judgment in which Evelyn T. Knight was sentenced, as the result of a jury verdict of guilty of possession of a controlled dangerous substance (heroin), to one (1) year imprisonment.

We take that action for the reason that the State did not comply with Maryland Courts and Judicial Proceedings Code Ann. § 10-1003, and because we are unable to agree with the trial judge that the State's failure to comply with the clear mandate of section 10-1003 was harmless error beyond a reasonable doubt.

Inasmuch as our holding is limited in its scope, no useful purpose will be served by our recounting all the facts out of which this case arose. It is enough for our purpose to know that Ms. Knight was arrested following the execution of a search and seizure warrant at her residence, 1607 East 32nd Street in Baltimore City. The search revealed six (6) tinfoil packets of a white powder which chemical analysis proved to be 4.3% heroin. It is the receipt into evidence of that report, absent the "live" testimony of the chemist relative to chain of custody, that is assailed in this Court by the appellant.

By the enactment of Laws 1974, ch. 794, now codified as Courts art. §§ 10-1001 to 10-1003 inclusive, the General Assembly provided that it would not be necessary for the chemist to appear as a witness in a trial of a person for violation of this State's Controlled Dangerous Substances Laws, Md. Ann. Code art. 27, §§ 276-302, to establish the proper chain of custody unless the defendant complies with the statutory prerequisite spelled out in Courts Art. § 10-1003.[1] Section 10-1002 provides:

---

1. The preamble to Laws 1974, ch. 794, states that the act is "[f]or the purpose of providing for the admission of written reports of analyses of, and statements of the chain of custody of, suspected controlled dangerous substances as prima facie evidence and for exceptions thereto."

"For the purpose of establishing, in a criminal or civil proceeding, the chain of physical custody or control of evidence consisting of or containing a substance tested or analyzed to determine whether it is a controlled dangerous substance defined under Article 27 of this Code, a statement signed by each successive officer or other person having the custody of the evidence that he delivered it to the person indicated on or about the date stated is prima facie evidence that the person had custody and made the delivery as stated, without the necessity of a personal appearance in court by the person signing the statement. The statement shall contain a sufficient description of the material or its container so as to distinguish it as the particular item in question and shall state that the material was delivered in essentially the same condition as received."

Section 10-1003 states:

"In a criminal proceeding, the prosecution shall, upon written demand of a defendant filed in the proceedings at least five days prior to a trial in the proceeding, require the presence of the chemist, analyst, or any person in the chain of custody as a prosecution witness. The provisions of §§ 10-1001 and 10-1002 concerning prima facie evidence do not apply to the testimony of that witness. The provisions of §§ 10-1001 and 10-1002 are applicable in a criminal proceeding only when a copy of the report or statement to be introduced is mailed, delivered, or made available to counsel for the defendant or to the defendant personally when he is not represented by counsel, at least ten days prior to the introduction of the report or statement at trial."

Because the State had, in answer to a discovery motion, furnished a copy of the report to the appellant's counsel, it did not notify her counsel that the chemist was not going to

appear at the trial. Appellant's counsel contended in the trial and here that the furnishing of the report in response to discovery did not comply with section 10-1003 inasmuch as there was nothing in the report to indicate the chemist would not be called to testify. *Ergo,* appellant, not having received word from the State that it intended to submit the report *sine* the chemist's presence at trial, did not make "written demand" that the chemist be physically present to testify. Appellant asserts that the State's non-compliance with the statute misled her into believing the State would have the chemist testify. She asserts that as a result she had no opportunity to cross-examine the chemist as to the propriety of the chain of custody in order that she might be able to weaken or destroy the impact of the chemist's report. The sum and substance of her argument is that she has been denied the right to confront the very witness whose report established that the seized material was a proscribed narcotic.

The trial judge agreed with the position taken by the assistant state's attorney that appellant had a copy of the report in her possession for "almost a year" [2] prior to trial, and that if she wanted the chemist present at trial she should have made the written demand required by Courts Art. § 10-1003.

We do not see the matter in the same light as the trial judge. We note that in answer to the discovery motion the chemist's report was sent to the appellant's counsel. There is absolutely nothing written, typed, or printed upon that report that would lead anyone to believe that the State intended to submit the report in lieu of the testimony of the chemist. In fact, a contrary conclusion may be drawn from the State's response to one of the questions put to it on discovery. The State was asked to "[f]urnish the Defendant with a list of names and addresses of the witnesses whom the State intends to call to prove its case in chief. . . ." The State replied, "The names and

---

2. The State's reply to the discovery motion was dated November 9, 1976. The case was tried on July 20, 21, and 22, 1977. We have a different view of what constitutes "almost a year."

addresses of the witnesses the State intends to call to prove its case in chief are as follows:

> Dr. Sumer M. Dugan      Chemist, Crime Lab, BCPD"

Clearly, the State's response to the discovery motion indicated that it intended to call as a witness Dr. Dugan, the chemist who made the analysis upon which the charges were founded. Having been supplied with that information, there was no reason for the appellant's counsel to believe that the State was not going to call Dr. Dugan to the witness stand. Consequently, it would appear that counsel had no need to make the "written demand" required by Courts Art. § 10-1003.

We think that once the State informed appellant, through her attorney, that it intended to call the chemist, Dr. Dugan, as a witness, the appellant had a right to rely upon that representation. Hence, she was not required to employ Courts Art. § 10-1003 in order to accomplish the very thing the State said that it intended to do. When the State changed its mind and elected to proceed by way of introduction of the chemist's report through a "chain of custody form" instead of having the chemist testify, it should have notified the appellant's counsel "at least ten days prior to the introduction of the report . . . at trial." In that way, the appellant would be in a position to make timely "written demand" for the "live" testimony of the chemist.

Were we to subscribe to the argument that the appellant possessed a copy of the report and, therefore, should have made "written demand" for the production in court of the chemist, we would, in effect, be holding that when the State answers that it "intends" [3] to call certain witnesses to testify it means that it might introduce a report by using a chain of custody form instead of the testimony of witnesses. To reach that point would require our rewriting of the dictionary:

---

3. The verb "intend" is defined in the *American Heritage Dictionary of the English Language* (1970 ed.) to mean: "1. To have in mind; to plan. 2. To design for a specific purpose or destine to a particular use. 3. To signify: to mean. . . ."

Moreover, notwithstanding the State's reply to discovery, a defendant would have to make demand under Courts art. § 10-1003 whenever he or she desired the chemist to testify personally. Under such a procedure, section 10-1003 would be devoid of meaning insofar as the State is concerned. Thus, the State could mislead an accused by responding on discovery that it "intends" to call the chemist as a witness, change its mind without notification to the accused, rely upon the chain of custody provisions of the Courts article to introduce the written report instead of having the chemist testify, and then beat back any objection on the ground that the accused did not make "written demand" within five (5) days of trial for the physical presence of the chemist. Such a chain of events seems to us to be practicing law by ambush. We do not countenance it.

We think the appellant was misled by the State to her detriment, and the chemist's report should not, under the circumstances of this case, have been received into evidence. To admit the report over objection was error going to the fundamental right of an accused to be confronted by her accusers. The report was, as we have seen, the sole basis for concluding that six (6) tinfoil packets found in the purse of the appellant were a proscribed controlled dangerous substance. We have no way of knowing what the cross-examination of Dr. Dugan will produce. The chemist's testimony might have shown a void in the chain of custody that would cause the rejection of the six (6) packets of heroin. Thus, we cannot conclude that the admission of the report into evidence without the opportunity to cross-examine the author of that report as to the chain of custody is harmless error beyond a reasonable doubt. *Dorsey v. State,* 276 Md. 638, 350 A. 2d 665 (1976).

We note that this whole issue could have been avoided if, when the objection to the admission of the report was made, the State had withheld the report and produced the chemist. Alternatively, the trial judge could have declined to receive the report and directed the State to produce the chemist to testify.

Because of our disposition of this issue, we do not reach the remaining two (2) questions raised by the appellant. Both deal with rebuttal testimony, and it is likely that they will not be an issue at the retrial of this case.

> *Judgment reversed and case remanded for a new trial.*
> *Costs to be paid by Mayor and City Council of Baltimore.*