669 P.2d 585

The STATE of Arizona, Appellee,

v.

Jerry Michael CONN, Appellant.

No. 2 CA–CR 2551.

Court of Appeals of Arizona,
Division 2.

Oct. 1, 1982.

Rehearing Denied Nov. 17, 1982.

Review Granted Dec. 21, 1982.

154

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Robert J. Hirsh and Michael B. Bernays, Tucson, for appellant.

## OPINION

BIRDSALL, Judge.

The jury found the appellant guilty of second degree burglary and three counts of sexual assault (rape) with two prior felony convictions. He was given an aggravated sentence of 20 years on the burglary and 28 years on each of the assaults to run concurrently with each other but consecutively to the burglary sentence. He was also found guilty of theft with the two priors and sentenced to a 12 year term to be served consecutively to the assault sentences. The trial judge found as aggravating circumstances, A.R.S. § 13–702(D), that the appellant inflicted severe emotional harm on the victim, threatened her with bodily harm, had a long criminal record, admitted previous sexual assaults and was on parole at the time of the offenses.

The issues raised on appeal are:
1) Evidentiary rulings;
2) Refusal of requested instructions;
3) Failure to give the jury a magnifying glass;
4) Misconduct of a juror;
5) Alleged misconduct of the prosecutor;
6) Use at sentencing of appellant's admissions of other offenses;
7) Excessive sentence.

We affirm and will discuss each of these issues in the order presented.

The facts necessary to our discussion of the issues are that the appellant entered the victim's home at about 4:00 a.m. through an unlocked kitchen window, went to her bedroom, threatened her, and committed three separate sexual assaults. A palm print identified as the appellant's with as many as 60 identical points of comparison was found on the inside sill of the window. Twelve identical points is sufficient to establish identity. We will discuss other facts as they are relevant to each issue.

### Evidentiary Rulings

The appellant complains of four separate evidentiary rulings. The first concerns the trial court's exclusion of hearsay statements made by him at the time of his arrest. An offer of proof showed that one of the arresting officers would testify that the appellant appeared excited, surprised and amazed at being arrested; that when he was told he was under arrest for rape he responded, "I was here all night; I got

home after drinking; I was in bed, there was no way I could have done that." The officer would also testify that his gun was drawn at the time. The appellant argues that this evidence qualified the statements as an excited utterance. Rule 803(2), Rules of Evidence, 17A A.R.S. We disagree.

■ Even if the trial judge believed the appellant was excited by the arrest (the presentence report shows at least a dozen prior arrests) the statements did not relate to that event. Instead they were attempts to establish an alibi. Under these circumstances the trial judge could properly find that the statements were unreliable since the appellant had every reason to fabricate and sufficient time for reflection. The admissibility of an "excited utterance" is an evidentiary ruling which is left to the judgment of the trial court absent a clear abuse of discretion. We will not fault that decision here. *State v. Yee,* 121 Ariz. 398, 590 P.2d 937 (App.1978); *State v. Hughes,* 120 Ariz. 120, 584 P.2d 584 (App.1978).

■ We agree with the appellant that the statements were not inadmissible simply because they were self serving. That objection alone would not be valid. However, the trial court was entitled to consider the content of the statement in evaluating whether it was spontaneously caused by the "excitement" of the moment and therefore reliable. We are likewise not persuaded by the appellant's additional argument that refusing this evidence violated his constitutional right to call witnesses. *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The *Chambers* decision holding that a third party's confession to a crime should be admitted as a statement against interest despite state evidentiary rules to the contrary is readily distinguishable. The appellant could have testified that he was home all night and could not have committed the crime.

■ The next evidentiary ruling the appellant claims as error was the admission of the victim's opinion that her assailant was older than 17 years. The victim was unable to identify the appellant because he had placed a towel over her head when she had awakened. This issue arose in the trial because the police had stopped a 17 year old boy in the neighborhood shortly after the victim's report of the crime. The victim was 37 and the mother of two children. The appellant was 26 at the time of the offense. The appellant argues this opinion was not rationally based on the perceptions of the witness, Rule 701, Rules of Evidence, 17A A.R.S. We disagree. The victim testified to the words spoken; that the assailant had a mature way of speaking and to his conduct during the rape. Her opinion of his age was clearly admissible. It was not conjecture or speculation as in *United States v. Cox,* 633 F.2d 871 (9th Cir.1980), cited by appellant.

■ The third evidentiary issue involves the testimony of a police officer which the appellant claims implied prior police surveillance and inferentially prior bad acts. The appellant was known to the police—they were familiar with his two automobiles, his apartment building, and his modus operandi. He became a suspect immediately after the victim's call and a surveillance was established. The trial court had precluded proof of any prior bad acts. The officer who conducted the surveillance testified that he stationed himself at the appellant's apartment building, and about 25 minutes after the incident the appellant drove up in one of his cars, (his other car was already parked at the building), and parked. He also testified that he had seen the cars at that location at about the same time of the morning on other occasions. In order to be more certain of his identification of the car and the appellant the officer checked the car to see if it was still hot from being driven and had another officer call the apartment to make certain the appellant was then home. We agree with the appellant that from the moment the officer testified that he went to the appellant's apartment building the jury could infer prior bad acts. That the prosecutor inquired into immaterial facts, for example, that the officer had seen the cars at the same place and time on other occasions, did not give rise to the inference of prior bad acts—that infer-

ence was already created. But showing that the appellant was out at that time was most important to the state's case. This evidence was admissible to complete the story despite the inference created. *See State v. Rodriguez,* 131 Ariz. 400, 641 P.2d 888 (1981).

We also find that any error arising from the inference of prior bad acts was harmless beyond a reasonable doubt. The proof that appellant's palm print was on the sill of the entry window, with no explanation, placed him at the scene and there was no doubt that the rape had occurred. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. McVay,* 127 Ariz. 450, 622 P.2d 9 (1980); *State v. Brady,* 105 Ariz. 190, 461 P.2d 488 (1969). We are aware that the jury was deadlocked in the first trial of this case. We do not consider that to detract from our finding that the evidence of the appellant's guilt was overwhelming.

The last evidentiary ruling claimed as error is the court's order that the appellant speak the same words to the victim in an attempt to have the victim make an in-court voice identification. At the state's request the appellant said:

"Don't move or you're dead. I am not going to hurt you. You are the first woman I have been with. Are you enjoying yourself? Relax. Can you breathe? I want you to know that for whatever it is worth it was very good. You just lie here for two minutes and then you do what you need to do."

This request came during redirect examination of the victim in response to cross-examination which showed that the victim had never tried to make a voice identification even though asked by the police to listen to a tape recording. This was not error. *State v. Spain,* 27 Ariz.App. 752, 558 P.2d 947 (1976).

### Instructions

The appellant contends that the trial court committed reversible error in refusing three requested instructions.

The first of these was a "Willits" instruction, *State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964):

"If you find that the state or any of its agents destroyed, or allowed to be destroyed, any evidence, including fingerprints, which may have been relevant, then you may infer that the evidence would have tended to disprove the state's case."

The evidence giving rise to the request was the destruction of a fingerprint lifted from the victim's apartment which the I.D. technician determined to be smudged thus having no discernable points of comparison. The police are not required to preserve items with no evidentiary value. *State v. Schilleman,* 125 Ariz. 294, 609 P.2d 564 (1980); Cf. *State v. Garrison,* 120 Ariz. 255, 585 P.2d 563 (1978). The trial court properly refused the instruction.

The second instruction appellant claims should have been given was:

"The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case."

This instruction was adequately covered by the instruction given that: "All twelve of

you must agree on a verdict. All twelve of you must agree whether the verdict is "guilty" or "not guilty."" Recommended Arizona Jury Instructions, Criminal Standard 10; *State v. Lockett,* 107 Ariz. 598, 491 P.2d 452 (1971).

The third and last error claimed in the refusal of instructions concerns the appellant's requested instruction to the effect that the jury could disregard all the testimony of a witness if convinced the witness testified falsely regarding a material fact. Our supreme court has specifically disapproved this instruction. *State v. Austin,* 124 Ariz. 231, 603 P.2d 502 (1979), cert. denied 446 U.S. 911, 100 S.Ct. 1841, 64 L.Ed.2d 264 (1980).

### The Magnifying Glass

The trial court refused the appellant's request that the jury be furnished a magnifying glass to examine the palm print. The jury's like request during deliberations was also denied. We find no error. This is a matter left to the discretion of the trial judge and we will not interfere absent a clear showing of abuse. *See Higgins v. Arizona Savings and Loan Association,* 90 Ariz. 55, 365 P.2d 476 (1961). Although it has been held that the furnishing of a magnifying glass to the jury is not the equivalent of permitting the jury to improperly experiment with the evidence, *People v. Turner,* 22 Cal.App.3d 174, 99 Cal.Rptr. 186 (1971), we find no abuse of discretion in refusing such a request.

### Juror Misconduct

The issue presented here is most troublesome because it arises from rather extreme contempt of one of the trial jurors. The juror violated the trial court's admonition against discussing the case and visited with a fellow worker about the fact that he was serving on the appellant's jury. It so happened that the fellow worker knew an attorney whose girlfriend was a law clerk in defense counsel's office. The attorney told the fellow employee who then told the juror that the law clerk, a female, had refused to work on the case. Later when the attorney told the fellow worker he should not have done that, the fellow worker attempted to de-emphasize this in a later conversation with the juror, but the juror said he did not even remember it. The attorney told the trial judge, after the verdicts, who advised both counsel, and this juror misconduct was the basis for a new trial motion. Only the fellow worker testified at the hearing on the motion which the trial court summarily denied.

There is no question that the juror was guilty of gross misconduct, but the misconduct does not come within any of the acts enumerated in Rule 24.1(c)(3), Rules of Criminal Procedure, 17 A.R.S., as grounds for a new trial. The appellant, was "receiving evidence not properly admitted during the trial," Rule 24.1(c)(3)(i). The information given the juror was not evidence pertaining to the case. Even assuming that it was, *Whitson* is readily distinguishable from the instant case. In *Whitson* the juror was told by the defendant's ex brother-in-law in a luncheon conversation during the course of the trial, that the defendant had deserted his wife two days before their child was born and that the wife committed suicide upon learning that he was being criminally prosecuted. According to what the juror told another juror after the return of the verdict, she also knew, or thought she knew, that the defendant was a robber, forger and had been in prison for five years. That "evidence" is much different than the information given the juror here that a law clerk had refused to work on the defense. Assuming, arguendo, that our juror did "receive evidence," under *Whitson* only if "such communications refer to the case *and* have a tendency to color the mind of the juror in such a way *as to make impossible a fair and impartial trial*—a new trial should be granted." (emphasis supplied) 65 Ariz. at 399, 181 P.2d 822. The communications here do not come within this standard. Although the appellant argues the juror could conclude that the law clerk knew the appellant was guilty, we do not arrive at that conclusion. It is far more logical to conclude that the law clerk thought the case

distasteful—a fact the juror learned anyway during the course of the trial.

██ Great weight must be given the ruling of the trial court on the question of granting or denying a motion for new trial based on juror misconduct. *Whitson,* ibid. Although *Whitson* says that the juror is in no position to be the *sole* judge of whether she was influenced, the trial court was entitled to consider that the juror here placed little significance on the information. The witness at the hearing on the motion for new trial testified that the juror said this had no impact on the verdict. Nor do we agree with the appellant's argument that we cannot rely upon the harmless error rule in *Chapman.* Although the *Whitson* court says "Nor can such misconduct be cured by the State's contention that a conviction would have resulted anyway by reason of the strength of the State's case," 65 Ariz. at 400, 181 P.2d 822, we interpret this to refer to the misconduct and the strength of the case in *Whitson.* We believe the harmless error rule could also be invoked in the instant case.

### Prosecutorial Misconduct

██ Prior to this trial the appellant escaped from custody. This was the subject of publicity in the community. The trial court denied the appellant's pretrial motion to preclude evidence of the escape. However, believing that the state intended to prove the escape, it was inquired into on voir dire examination and the appellant's counsel referred to it in opening statement. Then the prosecutor elected not to present any evidence concerning the matter. The appellant claims he was "tricked", and that this was misconduct of the prosecutor meriting reversal. We disagree. We believe the record establishes that the prosecutor's decision was only tactical. There is no evidence to support the charge that it was a dishonest or fraudulent or deceitful act. At most it was an innocent misrepresentation. It was not unethical conduct within DR1–102(A)(4), 17A A.R.S., as claimed by the appellant. None of the cases cited in support of this argument persuade us that the

prosecutor's "change of plan" rises to the stature of reversible error. In *United States v. Phillips,* 575 F.2d 1265 (9th Cir. 1978), cert. denied 444 U.S. 863, 100 S.Ct. 131, 62 L.Ed.2d 85 (1979), the prosecutor failed to reveal that a witness for the state had lied and the state was going to reopen. In the interim, defense counsel had made an opening statement. *Knight v. State,* 41 Md.App. 691, 398 A.2d 811 (1979) involved the prosecutor's representation that he was going to call a witness—the witness was not called—and the defendant, who otherwise would have called the witness, had to proceed without that evidence. In *State v. Foy,* 224 Kan. 558, 582 P.2d 281 (1978), the prosecutor specifically and unequivocally advised the court at the close of the state's case that it would withdraw its request for a felony-murder instruction, the defendant's case was then presented, and then the court, at the state's request, instructed the jury on that theory of the case. *United States v. Ott,* 489 F.2d 872 (7th Cir.1973) is akin to *Knight v. State, supra,* involving the status of a witness. The appellant does not question the trial court's ruling that the escape evidence was admissible. Nor does he deny that the escape occurred nor that the state could have proved it. This change in trial strategy did not constitute error.

### Consideration of Other Admitted Offenses

The appellant was arrested for another offense prior to these proceedings. While in custody on that charge, which was subsequently dismissed, he "cleared" five other sexual assault cases for a Tucson police detective. The detective promised him he would not be prosecuted for those offenses if he cooperated in solving them. The appellant then admitted each of those offenses, giving the detective sufficient details to convince him that he was the rapist in each case. He even went with the detective to the scene of each of the crimes and explained how he gained entry into each dwelling. No charges were filed.

██ These five offenses were the subject of a pretrial motion in the instant case, the court finding the confessions to be

involuntary, *State v. Burr,* 126 Ariz. 338, 615 P.2d 635 (1980), and prohibiting their admission in evidence. However, the trial court did consider them in sentencing the appellant. It is now claimed, as it was in the trial court, that this was error. We disagree. There was no promise that the admissions could not be used for such purpose. Absent such promise, they could be considered in the sentencing decision. *See State v. Jones,* 110 Ariz. 546, 521 P.2d 978 (1974). Any reliable, relevant evidence may be used at sentencing. *State v. Marquez,* 127 Ariz. 3, 617 P.2d 787 (App.1980).

The appellant argues that since the statements were determined to be involuntary they are unreliable. We disagree. The statements were involuntary because of the promise of immunity from arrest and prosecution. That does not make them unreliable. The record here establishes their reliability. The trial court very properly considered them in the sentencing phase.

### Excessive Sentence

■ The sentences imposed were within the statutory limits and were not more than justified by the instant offense and the aggravating factors found by the trial court. The court gave as reasons for the consecutive sentences, the same aggravating circumstances and the objective of the protection of society. The consecutive sentences are authorized under our new criminal code. A.R.S. § 13–708.

We affirm.

HOWARD, C.J., and HATHAWAY, J., concur.