**Tommy Lenzy PENNON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–3.**

Court of Criminal Appeals of Oklahoma.

May 15, 1978.

Irven R. Box, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

CORNISH, Judge:

Appellant, Tommy Lenzy Pennon, hereinafter referred to as defendant, was charged in the District Court, Oklahoma County, Case No. CRF-76-1190, with the offense of Robbery With a Dangerous Weapon, in violation of 21 O.S.Supp.1973, § 801, After Former Conviction of a Felony. The case was tried to a jury and a guilty verdict was returned. Punishment was assessed at thirty (30) years' imprisonment. From judgment and sentence defendant has perfected a timely appeal to this Court.

Donna Jo Kimbrough testified that on March 27, 1976, at about 7:00 p. m., she was on the porch of her residence, 312 N.W. 23rd. Street, Oklahoma City, talking with defendant, whom she knew, concerning his repayment of money which he had previously taken from her. The witness stated that after talking for some time, defendant stood up and then hit her in the head with a brick or piece of concrete, knocking her to the sidewalk. She blacked out momentarily and when she came to, defendant was sitting on her chest choking her and pounding her head against the sidewalk. Defendant then removed $1,238.00, most of it in One Hundred Dollar bills, from her front pocket, money which represented two months wages from her job as a security guard. Defendant then left and the witness eventually summoned aid. Ms. Kimbrough stated that the attack took place during daylight hours and that there was traffic on 23rd. Street. She then described her injuries which were quite severe. The witness stated that she knew defendant and had gone out for coffee several times with him, but that they were not romantically involved.

Officers Houck and Wilkerson testified for the State, but their testimony was not transcribed. Officer Larry Andrews stated that he arrested defendant in the early morning hours of March 28, 1976. During booking procedures, $1,217.00 was removed from defendant, which sum consisted chiefly of One Hundred Dollar bills. The money seized was identified in court and introduced as State's Exhibit No. 13.

Ms. Kimbrough was recalled for further cross-examination by defendant, relative to her relationship with him. Briefly stated, she once again denied any romantic involvement with defendant. Following her testimony the State rested.

The testimony of the defendant's first two witnesses, Karen Crawford and Barbara Barrow, was not transcribed. Leroy

Hooks, owner of the Lincoln Lounge, testified that he knew defendant and Ms. Kimbrough, and that several times he observed them together in his bar.

Mary Pennon, defendant's sister, stated that she knew Donna Jo Kimbrough and that once she found a note in defendant's truck from someone named Donna. The witness stated that the note asked defendant to contact Donna, and further that it expressed the writer's affection for defendant.

Letha Pennon, defendant's wife, stated that she and her husband lived at 6801 North Santa Fe where they raised farm animals for profit. She further stated that the cash found on defendant was money they saved to buy a car for one of her sons, who was in the Marine Corps. The witness also testified that during the last year of their marriage, defendant was dating Ms. Kimbrough and that she observed them together several times. The defendant then rested.

The State offered Officer Ron Chambers in rebuttal. However his testimony was not transcribed for this appeal.

The sole ground of error raised by the defendant is that during deliberation, the jury sent a note to the court asking the following question concerning the $1,217.00 which was seized from the defendant at the time of his arrest. "Was the blood on the money ever typed to determine if it was that of the victim?" After colloquy with counsel, the court replied "The court declines to answer your question."

The record is devoid of any evidence that the money seized from defendant was bloodstained. Further, the transcript and the briefs reveal that at the time the money was given to the jury for inspection neither counsel had observed blood stains on the money.

Defendant asserts that by concluding that the money was bloodstained the jury thereby considered facts which were not in evidence and that this operated to his prejudice.

Defendant cites 75 Am.Jur.2d, Trials § 1032 which states in part:

"The fundamental rule that all evidence should be taken in open Court governs the use of exhibits which the jury are permitted to take to the jury room. They may use the exhibit according to its nature to aide them in weighing the evidence which has been given and in reaching a conclusion upon a controverted matter. They may make a more critical examination of an exhibit than was made of it in Court, and may carry out experiments within the lines of offered evidence, but if their experiments invade new fields; and they are influenced in their verdict by discoveries from such experiments, which will not fall fairly within the scope and purview of the evidence then the jury have been taking evidence without the knowledge of either party. A defendant who consents that exhibits can be taken to the jury room, or who fails to interpose timely objection, cannot afterward urge error in this respect." (Footnotes omitted)

A collection of cases on this topic may also be found at 95 A.L.R.2d, 351. Thereunder is found *State v. Levin,* 117 Kan. 739, 232 P. 1020 (1925), which we find particularly relevant. John Levin was charged with Manufacturing Liquor and Possessing a Still. Some of the evidence introduced by the State consisted of a copper coil found near his residence, and several large barrels containing a residue of mash. During deliberations the jury requested to see these objects and defense counsel assented. In examining these exhibits, one of the jurors put his mouth to the end of the coil, and "blew out half a pint of pretty good looking stuff." An examination of the barrel revealed that it still contained some mash, which was removed. A comparison of the mash and the liquid obtained from the coil revealed that they smelled the same. Defendant assigned this as error stating that "the jury had no right to make an independent test of the exhibits, differing in character from that made when they were offered in evidence, or from any testimony pertaining to them." In rejecting this contention the Supreme Court of Kansas stated:

"Obviously the object of sending exhibits to the jury is to enable the jurors to make a more thorough examination of them than it was possible to make when the exhibits were offered in evidence. When a party to an action consents to the sending of exhibits to the jury, it is tantamount to an invitation to the jury on his part to make as thorough an examination of such exhibits as they desire. He is not therefore in a position to complain if such more thorough examination is made. Neither can he complain, in such a case, if such more thorough examination tends to strengthen the evidence against him." 232 P. 1022.

We are of the opinion that the instant case is precisely analogous. Defendant raised no objection to the introduction of the money although he had the right to inspect it before its submission to the jury. He cannot complain for the first time on appeal that the jury made a more thorough examination of it than he did. In the fifteenth syllabi to *Saunders v. State,* 4 Okl.Cr. 264, 111 P. 965 (1910), a murder case, it is stated:

"There is no error in allowing the jury to take with them to their jury room a coat worn by the deceased when he was shot, which was introduced in evidence, where the defendant through his attorney in open court consents thereto. And in such case there is no error in some of the jurors putting on the coat in their jury room for the purpose of observing the location of the bullet hole therein."

See, also *Thompson v. State,* Okl.Cr., 518 P.2d 1119 (1974), wherein the court held in part that possible misconduct of the jury in turning the lights in the jury room on and off to see if they could recognize one another was invited by defense counsel's assertion in closing argument "that he had awakened the previous evening, and was not able to recognize the features of his wife in the semi-darkened room."

We therefore conclude that the analysis by the jury and the jury's conclusion that the money was bloodstained does not dictate that this Court reverse or modify the conviction.

The judgment and sentence must therefore be *AFFIRMED.*

BUSSEY, P. J., and BRETT, J., concur.