731 P.2d 1233

**The STATE of Arizona,
Appellee/Cross-Appellant,**

v.

**Michael E. FERREIRA,
Appellant/Cross-Appellee.**

No. 2 CA–CR 4085.

Court of Appeals of Arizona,
Division 2, Department B.

July 9, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Paul J. McMurdie, Phoenix, for appellee/cross-appellant.

Frederic J. Dardis, Pima Co. Public Defender by John F. Palumbo, Tucson, for appellant/cross-appellee.

## OPINION

LIVERMORE, Presiding Judge.

On October 2, 1984, defendant escaped from custody. He had been serving eleven concurrent thirty-year-to-life sentences for armed burglary and sexual assault. Two months later, on December 11, University of Arizona police officers found defendant reading at the university's library and arrested him. Charges directly relating to the escape were raised in a separate action and are not at issue here. This appeal results from his conviction of twelve charges arising from two sexual assaults which occurred during the period of his escape.

Five errors are alleged by defendant; the state raises one issue by cross-appeal. The challenged actions are:

1. Trial court denial of a motion to suppress,

2. Prosecutorial use of subsequently set aside prior convictions to impeach defendant at trial,

3. Jury experimentation,

4. Expert witness hair-comparison testimony and prosecutorial comment thereon,

5. Trial court denial of a motion to continue, and

6. Quashing of a media-witness subpoena.

We affirm.

### Motion to Suppress

Following defendant's arrest he was transported to the office of the Tucson Police Department. Two detectives, Lane and Johnson, gave *Miranda* warnings and engaged defendant in conversation. They discussed defendant's escape and he admitted a concomitant burglary, kidnapping and auto theft. Charges for these offenses were tried in a separate proceeding. Defendant actively participated in the colloquy, filling in details and rounding-out the detectives' knowledge of those events. However, when the questions turned to sexual assaults and other unresolved crimes that had been committed during defendant's period of freedom, he declined to talk about those matters without the advice of counsel.

In violation of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), officers Lane and Johnson continued to interrogate defendant without benefit of counsel. While the questions did not directly pertain to the unresolved sex crimes, they were related in a peripheral way. For example, Officer Lane asked, "Why don't you just tell us what makes you tick, what makes you pick victims, why you do what you do?" Officer Johnson suggested that defendant had "nothing to lose" by talking since a substantial period of incarceration certainly awaited him in any event. Johnson also, in his own words, "laid a guilt trip" on defendant, telling him that confessing would be the moral thing to do as it would allow "the victims to go to bed at night without looking over their shoulders, knowing that their attacker had been arrested." Defendant was visibly shaken by this appeal; he again requested an attorney.

Following this second request defendant was permitted use of a telephone and he personally attempted to contact counsel.

The officers also sought counsel for him. Approximately one hour passed, defendant being subjected to no questioning during that time. As the third post-arrest hour approached, Johnson and Lane decided to book the defendant on the escape charge, transport him to the jail and forego further questioning. Defendant was in a position to overhear the officers' conversation. While they were thus engaged and without prompting from them, defendant rose and stated that he would act as his own counsel. What followed was repeated on tape, moments later:

LANE: This is Detective Lane. The date is December 11, 1984. Time is 18.55 hours. Present is Sgt. Johnson, Detective McCall, and Michael Ferreira. We've been discussing a lot of things about the past hour or so since you were arrested. Before we did that, Sgt. Johnson, after you advised him that you knew your rights in telling him what they were, he advised you of your rights—you understand all that? All your rights—is that right? You're shaking your head yes.

FERREIRA: I'm nodding. I'm nodding in affirmation, yes. Affirmatively.

LANE: You also discussed a lawyer. You indicated that you wanted to have a lawyer to discuss what we're about to discuss and we tried unsuccessfully in trying to obtain a public defender and I told you, and I'm telling you again, that I can't cut any deals right now. We've already asked past that and you were told not to make any deals and what I'm going to do is give you the opportunity to—you have the right to have an attorney, we just can't find one. If you don't want to say anything, don't say anything. If you don't want to tell me (inaud), don't tell me (inaud). If you want to, now's your opportunity and what I'm going to do is pay attention to what you tell me. Hopefully it will be useful and hopefully we can work something out, but I can't promise any deals. OK? Now you said you want to tell me something—you're acting on your own behalf?

**FERREIRA:** Well, I guess that would be the technicality of proper person. I guess I could say it into the tape recorder.

**LANE:** OK.

**FERREIRA:** Failing to get a lawyer, I, and knowing that all a lawyer would do is tell me to not talk to the police, I—acting in proper person, you know, as my own lawyer, I advised myself, it sounds silly, I know it's going to sound really silly on the tape—I advised myself not to talk to the police and now I'm ignoring my advice in talking to the police. So ... that's how that works.

**LANE:** So, what you're basically saying is that ...

**FERREIRA:** All I wanted a lawyer ...

**LANE:** You're aware—oh, OK, well let's uh ... I don't know, do you want me to start off or do you want to start off?

**FERREIRA:** You start.

As the taped discussion continued, defendant admitted burglarizing the residence of, and sexually assaulting the person of, L.S. He steadfastly denied a similar assault on K.M.

Defendant was charged with both assaults. Prior to trial, he moved to suppress any and all statements made at the December 11 interrogation. As "fruit of the poisonous tree," he also sought to suppress the contents of a backpack taken from him at the time of his arrest. *State v. King,* 140 Ariz. 602, 604, 684 P.2d 174, 176 (App. 1984). The motion was denied.

■ We initially note that the judge erred when he failed to make specific findings of fact and conclusions of law setting forth the reason for his denial. *State v. James,* 141 Ariz. 141, 146, 685 P.2d 1293, 1298, cert. denied, 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 332 (1984). However, defendant does not challenge the denial on that ground and, in fact, admits that the record established at the voluntariness hearing is sufficient to facilitate resolution of this appeal.

■ When, during a custodial interrogation, an accused requests counsel, the interrogation must cease until an attorney is present. *Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966). Officers Johnson and Lane clearly violated that rule. *State v. Ashelman,* 137 Ariz. 460, 671 P.2d 901 (1983). Their misconduct, however, resulted in no incriminating statements and defendant's second request for counsel resulted in the cessation of interrogation. See *State v. James, supra.*

■ An accused, once having invoked his right to the assistance of counsel, is not "powerless to countermand his election" and choose to speak. *Edwards v. Arizona,* 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, 386 (1981). Although any subsequent statement is so inherently suspect as to be presumptively involuntary, *State v. Emery,* 131 Ariz. 493, 498, 642 P.2d 838, 843 (1982), and is to be viewed with skepticism, *Michigan v. Mosley,* 423 U.S. 96, 111 n. 2, 96 S.Ct. 321, 329, 46 L.Ed.2d 313, 325 (1975), if the state can show the accused initiated a knowing and voluntary abandonment of his request for counsel, statements thereafter made are admissible at trial. *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983) (plurality opinion of Rehnquist, J.). The state's burden is two-fold; proof of initiation must be followed by proof of valid waiver. *Id.* at 462 U.S. 1045, 103 S.Ct. 2834–35; id. at 1048, 103 S.Ct. at 2836 (Powell, J. concurring); *id.* at 1055, n. 2, 103 S.Ct. 2840 n. 2 (Marshall, J. dissenting).

■ Johnson and Lane were conversing between themselves when defendant arose and announced his decision to speak. Their conversation indicated that they would not further question defendant. Defendant had not been questioned on any matter for some portion of an hour prior thereto. That evidence establishes that when the defendant then chose to speak, it was at his own initiation. Whether there followed a valid waiver of the previously asserted right to counsel turns "upon the particular facts and circumstances surrounding [this] case, including the background, experience and conduct of the accused." *Edwards,*

supra, 451 U.S. at 488, 101 S.Ct. at 1887 (Burger concurring) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

Defendant's background included several previous encounters with the law. He had been convicted of crimes in 1974 and in 1980. On the second occasion he conducted a portion of his trial defense. During the instant occasion defendant alerted arresting officers to the fact that he had been in custody for almost one hour but had not yet been read *Miranda* rights. Defendant then recited those rights verbatim before the officers read them. Defendant's background and experience provided him with a working knowledge of police procedures and their interrelationship with individual constitutional rights. Confessing in light of that knowledge bespeaks voluntariness. *State v. Hensley,* 137 Ariz. 80, 88, 669 P.2d 58, 66 (1983). Defendant focused attention upon himself, unambiguously invoked his right to self-representation, and belittled the import an attorney would have for him. That conduct, coupled with the other recited facts and circumstances, sustains the trial court's implicit finding that the waiver was voluntary.

■ Defendant makes two other arguments concerning his confession. First, he contends that his confession, though occurring an hour later, was nonetheless the fruit of the earlier *Edwards* violation. That it could have so been is obvious. Whether it was is a question of fact for the trial court. Significant in this case is the intervening action of the officers indicating to the defendant that no further interrogation would occur without counsel's presence. The officers sought to obtain counsel for defendant and allowed him to make his own efforts to talk with a lawyer. That conduct, in our view, sufficiently purged any taint of the earlier violation. That conclusion also answers defendant's contention that any confession occurring as a result of an *Edwards* violation is *per se* involuntary.

### Prior Convictions

■ Defendant next contends that the trial judge had no choice but to grant a new trial when prior convictions used by the prosecutor to impeach defendant were set aside. Citing *State v. Kiser,* 111 Ariz. 316, 529 P.2d 215 (1974), defendant takes the position that, under those circumstances, the granting of a new trial is mandatory, not discretionary. Because of the doctrine of harmless error, recognized in Kiser, we find a new trial unnecessary.

That the error was harmless most clearly appears from the fact that only six of the seventeen convictions admitted for impeachment were reversed. It is extremely unlikely that the additional six convictions rendered the defendant's credibility more suspect. See *State v. Reese,* 26 Ariz.App. 251, 547 P.2d 522 (1976). In addition, as to the L.S. incident, the jury had before it defendant's taped confession as well as corroborating trial testimony from both defendant and L.S. As to the K.M. assault, there existed incriminating hair-comparison evidence, the victim's identification of defendant's belongings, and a marked similarity between a jar taken from K.M.'s apartment and one found in defendant's possession. Further, use of the prior convictions was severely limited by the trial court. The prosecutor was not permitted to bring out the nature of the offenses, only that they were felonies. She mentioned the convictions only briefly in questioning defendant and placed no undue emphasis upon them. Given that record there exists no reasonable doubt that the jury would have found defendant guilty had the reversed prior convictions been excluded. See *State v. Montes,* 136 Ariz. 491, 497, 667 P.2d 191, 197 (1983).

### Jury Experimentation

K.M. told an investigator that her assailant wore a brown and green plaid scarf. Taken from defendant and admitted into evidence was a brown and grey plaid scarf. Defense counsel made much of the discrepancy when cross-examining K.M. and, in closing, asked the jury, "if you were to look at this scarf, would you call it brown

and green?" The jurors did examine the scarf while deliberating and they did so under a variety of lighting conditions. Discovering that, defendant moved for a new trial pursuant to Rule 24.1(c)(3)(i), Rules of Criminal Procedure, 17 A.R.S. He claimed that by viewing the scarf in a darkened room the jury "experimented," resulting in new evidence not properly admitted at trial.

■ It is a fundamental proposition that:

> In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel. *Gibson v. Clanon*, 633 F.2d 851, 854 (9th Cir.1980), cert. denied, 450 U.S. 1035, 101 S.Ct. 1749 [68 L.Ed.2d 231] (1981), (quoting *Turner v. Louisiana*, 379 U.S. 466, 472–73, 85 S.Ct. 546, 549–50, 13 L.Ed.2d 424 (1965)).

Creation of extraneous evidence by the jury through unauthorized tests violates that mandate and requires retrial. However, not every perusal by jurors of tangible exhibits creates new evidence. If the jurors are to accomplish their function of evaluating evidence properly admitted they ought not be prohibited from scrutinizing exhibits, even if their inquiry is more critical than that conducted in open court. *Pennon v. State*, 578 P.2d 1211 (Okla.Crim. App.1978). So long as the inquiry does not differ in character from that made when the evidence was offered, the jury's examination does not subject defendant to any risks of inculpation against which he has not already had opportunity to protect himself. See also *Thompson v. State*, 518 P.2d 1119 (Okla.Cr.App.1974). Examination is of a different character when it introduces "extra-record facts" and inferences not reasonably inferable from properly admitted testimony and evidence. In this case, the jury had already seen the scarf in the courtroom under lighting admittedly dissimilar to that of the assault scene. Doing so again in different lighting, as part of the deliberative process, was permissible as a closer scrutiny of the exhibit. *Rossell v. Volkswagen of America*, 147 Ariz. 160, 709 P.2d 517 (1985).

### Hair-Comparison

Defendant next argues that the jury was misled and confused by the testimony of Steve Garrett, the state's hair and fiber examiner, and by the prosecutor's comments on Garrett's testimony. Specifically, defendant claims prejudicial Garrett's conclusion that hairs found in K.M.'s apartment and on defendant's clothing were derived from "a common origin" and the county attorney's characterization of that testimony as evidence "there is no way to dispute." Trial counsel objected to neither statement. Consequently, any error was waived unless it was fundamental. *State v. Libberton*, 141 Ariz. 132, 138, 685 P.2d 1284, 1290 (1984). We find no error.

■ There is no dispute that Garrett was properly permitted to testify to the identity of the hair samples. His initial characterization of "common origin" was premised upon his never, in five-and-one-half years of comparisons, having seen "diseased," cut, pubic hairs similar to those found in K.M.'s apartment and on defendant's person. That otherwise admissible evidence was not rendered inadmissible simply because strongly inculpatory.

We recognize that unqualified conclusions by an expert may have exaggerated, prejudicial impact upon the trier of fact. *United States v. Massey*, 594 F.2d 676 (8th Cir.1979). Garrett immediately qualified his "common origin" remark, however. He refused to couch his finding in numerical or statistical terms and insistently limited it to an unquantified probability that the hairs "could have come from the same source."

■ Nor can it fairly be said the prosecutor created prejudice when she told the jury:

> [I]f you don't want to rely on identification by [K.M.] alone with the clothing, you can't get around that hair. There is no way to dispute that hair.

That statement did not, as defendant contends, equate the hair-comparison with defendant's guilt beyond a reasonable doubt. See *United States v. Massey,* supra. It was a plea for consideration of all the evidence and, as such, was proper. See *United States ex rel. DiGiacomo v. Franzen,* 680 F.2d 515 (7th Cir.1982).

### Motion to Continue

On the eve of trial defendant moved for a continuance in order to provide his hair-comparison expert, Lucian Haag, time to review Garrett's proposed testimony. He now contends the court's denial of that motion wrongfully prevented his presentation of defenses.

Two months before trial the state disclosed its intention to present expert hair-comparison testimony. Garrett was interviewed by defense counsel one month prior to trial. The interview was recorded; Garrett's notes were available for copying. Although rebuttal expert Haag was contacted immediately following the interview, he was not provided a copy of the interview tape but was, instead, required to wait for its transcription. Due to a backlog in transcription services, Haag did not receive Garrett's transcribed testimony until June 17; trial was scheduled for the following day.

Looking to the factors enumerated in *State v. Reynolds,* 123 Ariz. 117, 118, 597 P.2d 1020, 1021 (App.1979), we find the trial court's denial of defendant's motion proper. Had defense counsel been diligent, Haag would have had time to prepare. Although defense counsel had a recording of the interview, Haag was never provided a copy. Nor was he given a copy of Garrett's notes. He received no testable quantity of the hair. In short, defense counsel made no effort to prevent his expert's unpreparedness.

Furthermore, defendant has shown no prejudice. Although Haag obtained Garrett's transcribed testimony three days before that testimony was presented in open court, Haag was never called to testify. No offer as to what his testimony would have been has ever been made. Allegations on appeal that Haag could have impeached Garrett more effectively than did counsel will not support a reversal absent a showing how the contested denial prevented Haag from doing just that. *State v. Amarillas,* 141 Ariz. 620, 688 P.2d 628 (1984).

### Cross-Appeal

The state subpoenaed a newspaper reporter who had interviewed defendant. It believed she had knowledge tending to prove defendant's confession voluntary. The subpoena was quashed for failure to conform with the technical requirements of A.R.S. § 12–2214. Having found defendant's confession admissible, we need not reach the state's cross-appeal challenging that quashing.

Affirmed.

BIRDSALL and LACAGNINA, JJ., concur.