**STATE of Minnesota, Respondent,**

v.

**Tony Dejuan JACKSON, Appellant.**

**No. C5–98–1339.**

Court of Appeals of Minnesota.

June 15, 1999.

Review Denied Aug. 25, 1999.

Mike Hatch, Attorney General, St. Paul, and Doug Johnson, Washington County Attorney, Michael C. Hutchinson, Assistant County Attorney, Stillwater, for respondent.

Bradford S. Delapena, Assistant State Public Defender, Minneapolis, for appellant.

Tony Dejuan Jackson, Bayport, appellant pro se.

Considered and decided by
SHUMAKER, Presiding Judge,
RANDALL, Judge, and HUSPENI,*
Judge.

## OPINION

SHUMAKER, Judge.

On May 4, 1997, a man raped E.R. in her parents' home. On May 22, 1997, a man raped A.S. in her home. The state charged Tony Dejuan Jackson with both incidents.

Jackson consented to the joinder of the cases for trial. The jury found him guilty of burglary, criminal sexual conduct, assault, and false imprisonment from the May 4 incident. The jury was unable to reach a unanimous verdict as to any

charge from May 22, and the trial court declared a mistrial on those counts.

The court sentenced Jackson to a term of 182 months for criminal sexual conduct in the first degree—a double durational departure—and to a consecutive sentence of 48 months for the burglary.

Appealing from the judgment of conviction, Jackson contends that the court abused its discretion by denying his motion for a *Schwartz* hearing and by improperly departing from the sentencing guidelines. We affirm.

## FACTS

On May 4, 1997, E.R. was alone in the home she shared with her parents when a man knocked on the door and asked if he could use the telephone. E.R. let him come in. He was a tall, African American with short hair. He wore a polo shirt and a blue fanny pack with the words "St. Paul" on it.

Once in the house, the man put a gun to E.R.'s head and told her not to scream or he would kill her. When she said her parents would return soon, the man responded that he would kill them too. The man took E.R. to a bedroom where he put a sheet in her mouth and handcuffed her hands behind her back. He rolled her onto her back, put a blanket over her head and had vaginal intercourse with her two or three times. During his assault, the man repeatedly told E.R. to shut up or he would kill her. Before he left, the man removed the handcuffs and tied E.R.'s hands with yarn.

Jackson was driving at 3:30 a.m. on May 19, 1997, with his headlights off when the police stopped him. They searched his car and found, among other things, a blue fanny pack with the words "St. Paul" on it. In the pack was a set of handcuff keys. The police arrested but then released Jackson.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

·Minn. Const. Art. VI, § 10.

A tall, fit African–American male entered A.S.'s home on May 22, 1997, and raped her vaginally, orally, and anally. Although the man blindfolded A.S. before he assaulted her, she briefly saw him. She thought he was a man named Tony who worked at a newly opened restaurant in the area. Later that day, the police arrested Jackson, a tall, fit African–American male with short hair.

At Jackson's trial, the state presented evidence that two thumbprints from E.R.'s telephone matched Jackson's left thumb print and that one fingerprint from A.S.'s door matched a print of Jackson's left middle finger. A forensic scientist testified that sperm from the sheet on which the man raped E.R. and sperm from two items from A.S.'s house matched Jackson's DNA profile. The scientist also testified that the random match probability was less than one in a billion. Jackson denied both incidents and offered an alibi defense for the May 4 crimes.

At the beginning of its deliberations, the jury asked to review testimony about the qualifications of the state's fingerprint expert. The court denied the request and instructed the jurors to rely on their recollections of the evidence. On the second day of deliberations, the jury asked whether the defense agreed that a particular fingerprint belonged to Jackson. The court instructed that the jury had received all the evidence in the case. Ultimately, the jury returned guilty verdicts as to all four charges from May 4 and was unable to reach a unanimous verdict as to any of the May 22 charges.

After the jury delivered its verdicts, the *St. Paul Pioneer Press* newspaper reported that, on the third day of deliberations, some of the jurors tried to convince holdout juror Samuel Momah of the accuracy of the fingerprint evidence:

> Finally, on Friday morning, Dow had Momah look at the fingerprint taken from the Cottage Grove woman's telephone and compare it with the one of Jackson's introduced as evidence.

"I showed him the fingerprint and I had him look at it with a magnifying glass," Dow said.

Momah agreed they were the same. Dow and the other jurors even dabbed their own fingers with ink and showed how they were different from the two in evidence. "He did not believe the testimony of experts," Dow said. "He had to see it for himself."

Because of the newspaper article, Jackson's attorney requested a *Schwartz* hearing to explore possible juror misconduct. The court denied the request, ruling that, even if the jurors did what the story reported, they did not act improperly. Rather, their inquiry and conduct were merely steps in their deliberations.

Finding that Jackson's cruelty, E.R.'s age, and the effects of Jackson's conduct on E.R. aggravated the severity of his rape, the court doubled the presumptive sentence for the criminal sexual conduct offense. The court imposed the presumptive sentence for burglary but made it consecutive to the other sentence.

## ISSUES

1. Did the trial court abuse its discretion by denying appellant's request for a *Schwartz* hearing?

2. Were the trial court's double-durational departure and consecutive sentences an abuse of discretion?

## ANALYSIS

1. *Schwartz* Hearing Motion

A trial court has discretion to grant a new trial for juror misconduct. *State v. Kelley*, 517 N.W.2d 905, 910 (Minn. 1994). The standard of review for denial of a *Schwartz* hearing is abuse of discretion. *State v. Larson*, 281 N.W.2d 481, 483–84 (Minn.1979). Although *Schwartz* hearings are to be liberally granted, a defendant must establish a prima facie case of "sufficient evidence which, standing

alone and unchallenged, would warrant the conclusion of jury misconduct." *Id.* at 484.

■ Here, Jackson argues the trial court abused its discretion by refusing to conduct a *Schwartz* hearing. Jackson's evidence of alleged misconduct consists of a newspaper article reporting that during deliberations some jurors inked their own fingers to persuade a holdout juror that their prints were different from those in evidence. Jackson contends that this was an impermissible jury experiment. He argues that the jurors' act of inking their fingerprints represented more than jury thought process and was instead the acquisition of evidence outside the judicial process.

Jackson cites *Jensen v. Dikel*, 244 Minn. 71, 69 N.W.2d 108 (1955), as analogous to this case. In *Jensen*, the jury used tools not admitted into evidence "to perform an independent experiment" with defendant's steering mechanism by replacing missing parts with those from one of the sample mechanisms. *Id.* at 78, 69 N.W.2d at 114. The experiment allegedly proved that it was impossible for the steering mechanism in question to have failed. *Id.* Jackson argues that the jury here also performed an independent experiment and in effect created new evidence in the case when they inked their own fingerprints. Jackson's argument is unpersuasive. Even assuming the accuracy of the newspaper story, the jury merely tested the credibility of certain evidence by examining it. The jury did not use or consider evidence that had not been received in the trial. *See generally, State v. Rainer*, 411 N.W.2d 490, 498 (Minn.1987) (holding that jury experiment that did not go beyond evidence received was not improper). In inking their own fingers the jurors were merely conducting a confirmatory comparison to test the conclusion that all fingerprints differ. This was not juror misconduct.

■ Furthermore, Jackson has supported his *Schwartz* motion only with the newspaper article itself.

Certainly, alleged statements of jurors reported in newspapers must be viewed skeptically. The edited version of what a reporter writes that he heard a juror say after trial may correspond very little to what a juror actually asserted in the jury room deliberations.

*Larson*, 281 N.W.2d at 485 (holding that trial court did not abuse discretion by denying *Schwartz* hearing when newspaper reported that a juror was overheard to have said defendant had been in trouble before). Mere allegations of possible juror misconduct are insufficient to make the prima facie showing necessary for a *Schwartz* hearing. *See State v. Anderson*, 379 N.W.2d 70, 80 (Minn.1985) (facts alleged for a *Schwartz* hearing may not be wholly speculative).

2. **Sentencing**

Jackson contends that the court abused its discretion in departing durationally on the criminal sexual conduct conviction and in sentencing consecutively rather than concurrently for the burglary conviction.

■ Sentencing is within the broad discretion of the trial court, and this court "generally will not interfere with the exercise of that discretion." *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981). Although the trial court generally applies the presumptive sentence, the court has discretion to depart when the offense involves "aggravating or mitigating circumstances." *State v. Best*, 449 N.W.2d 426, 427 (Minn. 1989). In deciding whether the circumstances support a departure from a presumptive sentence, the trial court focuses on "whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Back*, 341 N.W.2d 273, 276 (Minn.1983). Additionally, the imposition of consecutive sentences is within the trial court's discretion. *State v. Hendrickson*, 406 N.W.2d 631, 632

(Minn.App.1987), *review denied* (Minn. July 22, 1987).

Jackson concedes that his death threats and use of handcuffs, and the psychological impact of his crimes on E.R., justify a double-durational departure from the sentencing guidelines. However, he argues that the consecutive sentence for burglary was an additional departure that produced a sentence greater than double the presumptive sentence. He contends that unless there are severe aggravating circumstances—which he argues there are not—a durational departure may not exceed twice the presumptive sentence.

■■■■ If the trial court sentences more than one crime against the same victim from the same behavioral incident, the sentences are presumptively concurrent. Minn. Sent. Guidelines II.F. A consecutive sentence in that situation is a departure. *Id.*; *State v. Notch*, 446 N.W.2d 383, 385–86 (Minn.1989). Absent severe aggravating circumstances, the highest durational departure permitted is double the presumptive sentence. *State v. Lomax*, 437 N.W.2d 409, 410 (Minn.1989); *State v. Glaraton*, 425 N.W.2d 831, 834 (Minn.1988).

■■ A departure that more than doubles a presumptive sentence is rarely justified, but "consecutive sentencing may be combined with a double durational departure when the aggravating circumstances are severe." *Rairdon v. State*, 557 N.W.2d 318, 327 (1996).

■■ Here, multiple aggravating factors made the circumstances of Jackson's crimes severe. Jackson tricked E.R. into trusting him enough to let him into her home. Once inside E.R.'s zone of privacy, Jackson held a gun to her head and repeatedly threatened to kill her. He assured her that if her parents came home before he finished, he would kill them too. He handcuffed E.R.'s hands tightly behind her back, causing pain and abrasions to her wrists, and ensuring that she would not be able to use her hands to resist him

or to protect herself. He put a bedsheet into her mouth and a blanket over her head. He raped her vaginally and prepared to rape her anally as well. When E.R. protested, he raped her vaginally twice more. Although by chronological age E.R. was not a child, the court had an opportunity to assess her emotional maturity, sophistication, and vulnerability. The trial court did not abuse its discretion in its departure from the sentencing guidelines.

In his pro se brief on appeal, Jackson raised issues as to the legality of a motor vehicle stop and search, probable cause for a search warrant, a DNA analysis, and expert testimony regarding fingerprints. Although Jackson neither properly preserved nor raised these issues, we reviewed his brief and found no merit in his contentions.

## DECISION

The trial court properly exercised its discretion in denying Jackson's motion for a *Schwartz* hearing and in departing durationally and sentencing consecutively.

**Affirmed.**