IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

AUG 26 2005

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2004-0108 |
| Appellee, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| WILLIAM GOMEZ, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20032331

Honorable Barbara Sattler, Judge Pro Tempore

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Kathryn A. Damstra                    Tucson
                                                   Attorneys for Appellee

Robert J. Hooker, Pima County Public Defender
  By Frank P. Leto                                              Tucson
                                                   Attorneys for Appellant

E C K E R S T R O M, Judge.

¶1       Appellant William Gomez was convicted after a jury trial of armed robbery and aggravated assault with a deadly weapon. The trial court sentenced him to concurrent, presumptive terms of imprisonment of 10.5 years and 7.5 years respectively. He appeals his conviction, arguing that the court erred in refusing to allow the jury to use a magnifying glass to examine fingerprint evidence and in denying his requested instruction that the jury could conduct its own examination of the evidence. We affirm.

¶2       We view the facts in the light most favorable to upholding the conviction. *State v. Korovkin*, 202 Ariz. 493, ¶ 2, 47 P.3d 1131, 1132 (App. 2002). In the early morning of July 8, 2002, a young Hispanic male, later identified as Gomez, entered a convenience store. He went behind the counter where the clerk was standing and showed her a knife. He told the clerk to back up, not to touch anything, and not to move. The clerk backed up against the wall next to the cash register, and Gomez demanded that she open the register. She opened it, Gomez removed some cash, then grabbed some cigarettes that were below the counter.

¶3       Three months after the robbery, the clerk was unable to identify Gomez as the robber from a photographic lineup. However, fingerprints left on a cigarette carton touched by the perpetrator matched the known prints of Gomez when processed by the Arizona Fingerprint Identification System. Then, Sharalee Hensley, a latent print examiner for the Tucson Police Department, compared the latent prints to Gomez's known prints and confirmed that the prints in question belonged to Gomez. She testified that she used two

2

magnifying glasses to compare the latent fingerprints to the known fingerprints and proceeded to use at least one magnifying glass to conduct comparisons during her testimony.

¶4        Gomez argues that the jury was entitled to use a magnifying glass to examine the latent and known fingerprint cards to evaluate the expert witness's opinion that the fingerprints found on the cigarette carton belonged to him. He argues that the trial court's refusal to grant his request to allow the jury's use of a magnifying glass was error and violated his right to a fair trial because identification was the only issue at trial and Hensley was the key witness.

¶5        This court has previously held that it was not an abuse of discretion to refuse a defendant's request to furnish the jury with a magnifying glass to examine a palm print. *State v. Conn*, 137 Ariz. 152, 157, 669 P.2d 585, 590 (App. 1982), *approved in relevant part*, 137 Ariz. 148, 669 P.2d 581 (1983). Gomez maintains *Conn* is distinguishable because the palm print at issue there had as many as sixty identical points of comparison to the defendant's when twelve identical points are sufficient to establish identity. *Id*. at 154, 669 P.2d at 587. And in this case, Hensley testified that she does not count points of comparison to establish identity, but rather, performs a quantitative/qualitative assessment of the prints. However, this court's holding in *Conn* did not rest on the method used to compare the fingerprints. *Id*. at 157, 669 P.2d at 590. And we find no other reasonable basis upon which to disregard that holding.

¶6        Although *Conn* sets forth the appropriate standard for our review of the trial court's denial of the defense request—abuse of discretion—that case did not articulate the relevant criteria that trial courts should consider in exercising that discretion.  There, the court merely referred to other authority holding that "furnishing . . . a magnifying glass to the jury is not the equivalent of permitting the jury to improperly experiment with the evidence." *Conn*, 137 Ariz. at 157, 669 P.2d at 590, *citing People v. Turner*, 99 Cal. Rptr. 186 (Ct. App. 1971).

¶7        In essence, the state argues that the trial court properly refused to provide the jury with a magnifying glass because jurors do not have the expertise to conduct fingerprint comparisons.  The testimony of the state's expert supports that contention.  When defense counsel questioned Hensley about apparent differences between the known and latent prints in question, Hensley explained that the manner in which those prints are created can cause visual distortions that must be distinguished from genuine dissimilarities in the impressions.  According to Hensley, one apparent dissimilarity was caused by the amount of powder used in lifting the latent print, another by distortions caused in the known print when the skin was squeezed during the rolling process.  Such insights, crucial to conducting a valid fingerprint comparison, clearly fell beyond the expertise of the jury.

¶8        Gomez counters that jurors are entitled to scrutinize tangible objects admitted into evidence.  *See State v. Lichon*, 163 Ariz. 186, 192-93, 786 P.2d 1037, 1043-44 (App. 1990) (holding that jurors possessed "an absolute right" to review videotapes with assistance

of video equipment provided by the bailiff when tapes had been admitted into evidence). Gomez emphasizes correctly that Arizona courts repeatedly have upheld the right of deliberating jurors to review evidence thoroughly. As this court has stated, "[i]f the jurors are to accomplish their function of evaluating evidence properly admitted they ought not be prohibited from scrutinizing exhibits, even if their inquiry is more critical than that conducted in open court." *State v. Ferreira*, 152 Ariz. 289, 294, 731 P.2d 1233, 1238 (App. 1986). Our supreme court has even approved jury experiments with tangible evidence so long as those experiments do not "go 'beyond the lines of evidence' introduced in court and thus constitute the introduction of new evidence in the jury room." *Rossell v. Volkswagen of America*, 147 Ariz. 160, 172, 709 P.2d 517, 529 (1985), *quoting* E. Cleary, *McCormick on Evidence* § 217, at 541 (2d ed. 1972); *see also State v. Jackson*, 596 N.W.2d 262, 266 (Minn. App. 1999) (jurors inking their own fingers to compare to known and latent print evidence not an improper experiment but a mere test of the credibility of evidence received during the trial).

¶9 As we have previously noted in *Conn*, once latent and known prints have been admitted into evidence, the furnishing of a magnifying glass to a jury hardly constitutes an invitation to conduct an experiment. 137 Ariz. at 157, 669 P.2d at 590; *see also State v. Griffin*, 866 P.2d 1156, 1163 (N.M. 1993) ("Enhancement of the jury's visual acuity through use of a magnifying glass is not experimentation unless there is some indication that the magnification produced additional evidence."). Nor does it expose the jury to any

5

extrinsic evidence not admitted. *United States v. George*, 56 F.3d 1078, 1084 (9th Cir. 1995). Rather, it merely assists the jury in more carefully scrutinizing the evidence that has been admitted. *See United States v. Brewer*, 783 F.2d 841, 843 (9th Cir. 1986) (holding use of magnifying glass to examine photographs in evidence equivalent to use of corrective lenses).

¶10 Finally, we note that jurors are not required to accept expert testimony uncritically and are entitled to carefully review the factual or documentary bases of an expert's conclusions. *See Moon v. State*, 22 Ariz. 418, 423, 198 P. 288, 290 (1921) ("[T]he weight and value of [fingerprint] testimony [is] always . . . a question for the jury."); *see also Com. v. Lillioch*, 740 A.2d 237, 243 (Pa. Super. Ct. 1999) (use of magnifying glass to scrutinize photos already addressed by expert witnesses merely assisted jury in their truth-finding process). Here, the parties do not dispute that Hensley's testimony constituted the primary evidence of Gomez's guilt and that Hensley was vigorously challenged by Gomez. Under such circumstances, we cannot imagine how the jury could conscientiously deliberate without evaluating the accuracy and reliability of Hensley's appraisal of the fingerprints.

¶11 In short, Gomez's motion to provide the jury with a magnifying glass required the trial court to balance several legitimate and competing legal principles in the context of the case before it. In exercising its discretion, the court was entitled to consider the potential for jury confusion arising from the jury's use of a magnifying glass given its lack of training in distinguishing legitimate dissimilarities from mere insignificant distortions in the

fingerprint impressions.[1]  The court was also entitled to consider that the jury was still capable of scrutinizing any alleged dissimilarities on the fingerprint cards without using a magnifying lens.[2]  Importantly, the court neither prohibited the jury from scrutinizing the relevant known and latent prints, nor did it prohibit Gomez from exhaustively suggesting differences between them during cross-examination or argument.

¶12        An abuse of discretion occurs only when "the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Chapple*, 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983).  Given the specific context of this case, where the trial court neither prevented the jury from scrutinizing the fingerprint cards nor discouraged argument or inquiry as to the content of those cards, we cannot say the trial court abused its discretion when it reduced the risk of jury confusion by prohibiting the jury from using a magnifying glass.

¶13        Gomez next argues the trial court abused its discretion by denying his requested instruction that the jury could "conduct [its] own examination of any of the evidence that has been admitted during trial."  He claims that the court's preliminary

---

[1]The court touched on this concern when it observed that providing the jury magnifying glasses to examine the fingerprints would be "to turn them into expert witnesses."

[2]During summation, after the court denied Gomez's request to permit the jury to use a magnifying glass, Gomez invited the jury to use the admitted print cards to scrutinize several specific differences between the relevant known and latent impressions.  That argument suggested the print cards were not so small that a comparison was impossible without magnification.

instruction that the jurors could not conduct their own experiments, coupled with the prosecutor's statement in closing argument that it would be improper for the jury to "engage in the type of examination that [the defense] would like," may have confused the jury and, therefore, prevented it from performing its duty to examine the evidence.

¶14 We review for an abuse of discretion a trial court's denial of a requested jury instruction. *State v. Barraza*, 209 Ariz. 441, ¶ 8, 104 P.3d 172, 175 (App. 2005). "[W]hen the substance of a proposed instruction is adequately covered by other instructions, the trial court is not required to give it." *State v. Hoskins*, 199 Ariz. 127, ¶ 75, 14 P.3d 997, 1015 (2000). The trial court instructed the jury that it must determine the facts from the evidence presented in court, which consists of witness testimony and exhibits. The court also instructed the jury that it was not bound by expert testimony and should only give the testimony the weight it deserved. And, Gomez made clear in closing argument, without contrary objection, that the jury could compare the latent with the known fingerprints. *See State v. Bruggeman*, 161 Ariz. 508, 510, 779 P.2d 823, 825 (App. 1989) ("Closing arguments of counsel may be taken into account when assessing the adequacy of jury instructions."). Therefore, the jury was informed that it could evaluate and examine the fingerprints and weigh Hensley's opinion against the other evidence, and Gomez's proposed instruction was unnecessary.

¶15 We are not persuaded that the jury was confused by the court's preliminary instruction and the state's closing argument. The court's preliminary instruction—that the

8

jury was not to conduct any independent investigation or experiment—was a correct statement of the law and was not in conflict with the jury's duty to examine the evidence. Furthermore, we presume the jury follows the court's instructions, *State v. Prince*, 204 Ariz. 156, ¶ 9, 61 P.3d 450, 452 (2003), and the prosecutor's argument warning the jury of the dangers of conducting its own comparisons of the impressions was not enough to overcome that presumption.[3] Accordingly, the court's refusal to give Gomez's requested instruction was not error.

**¶16**     Affirmed.


_____
PETER J. ECKERSTROM, Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge


_____
J. WILLIAM BRAMMER, JR., Judge

---

[3]Although Gomez has argued both at trial and on appeal that the state's summation entitled him to an instruction that the jury could conduct its own comparison of the fingerprint cards, Gomez did not object to the relevant portion of the state's summation, nor does he raise an independent claim of improper argument based on it.