137 Ariz. 459 (1983)
671 P.2d 901
STATE of Arizona, Appellee,
v.
Kenneth O. ASHELMAN, aka Steven Douglas Foster, aka David Steven Foster, Appellant.
No. 5936-PR.
Supreme Court of Arizona, In Banc.
September 27, 1983.
Reconsideration Denied November 8, 1983.
*461 Robert K. Corbin, Atty. Gen., Phoenix by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.
Cary Sandman, Tucson, for appellant.
CAMERON, Justice.
Defendant, Kenneth Ashelman, was charged by indictment with one count of theft, A.R.S. § 13-1802, one count of kidnapping, A.R.S. § 13-1304, and two counts of sexual assault, A.R.S. § 13-1406, committed in a dangerous manner, A.R.S. §§ 13-701-, -702. The defendant was found guilty of all charges, and was sentenced to 21 years for the kidnapping and aggravated assaults and to an additional (consecutive) 7.5 years for the theft charge. A.R.S. § 13-708. The Arizona Court of Appeals, Division Two, affirmed. 137 Ariz. 471, 671 P.2d 912 (App. 1983). We accepted defendant's petition for review, taking jurisdiction pursuant to A.R.S. § 12-120.24 and Rule 31.19(a), Arizona Rules of Criminal Procedure, 17 A.R.S.
We must answer the following questions:
1. Whether defendant's post-arrest statements were properly admitted into evidence.
2. Whether evidence of defendant's bad acts was properly admitted into evidence.
3. Whether the trial court erred in admitting a certain umbrella and knife.
4. Whether the court erred in allowing the testimony of a prosecution witness concerning aspects of her contact with the defendant which the witness revealed only one day before testifying and after the trial began.
5. If error occurred, was it harmless.
The essential facts in this case are as follows. On 21 July 1981, the defendant, representing himself to be David Foster, of the Foster Freeze Ice Cream chain in Oregon, contacted the victim for the purpose of purchasing a home and commercial realty. Between 21 July and 25 July, the victim showed the defendant several properties. During at least two of these outings, the victim testified the defendant tried to kiss her. On 25 July 1981, while viewing a vacant house in a remote area outside Tucson, the defendant threatened the victim with a knife and forced her to participate in two acts of oral sex. He then locked her in the basement of the house and drove off in her car.
On 26 July defendant contacted Ms. A in Phoenix, and arranged to look at properties similar to those he had seen in Tucson. When Ms. A met with the defendant on the 28th, he threatened her with a knife and forced her to perform oral sex.
On 1 August, the defendant contacted Ms. B, another realtor in Lake Havasu. While looking at a house on 3 August, the defendant threatened Ms. B with a knife and attempted to sexually assault her, but she escaped.
The defendant was arrested in late August in Las Vegas. Upon being informed of his Miranda rights, he invoked his right to remain silent and his right to counsel. On 27 August, Detective Whitte of the Pima County Sheriff's Department flew to Las Vegas to interrogate the defendant, but the defendant invoked his right to counsel. Despite that fact, the detective continued to talk to the defendant, and mentioned three facts in particular: that the car had not been found and the victim's insurance company was pressuring her to settle, that warrants of arrest were out for the defendant in two other Arizona counties, and that fingerprint and hair samples would be taken from the defendant.
While the physical evidence was being taken, defendant asked the detective about the facilities of the Pima County Jail. During the conversation, the defendant mentioned that the victim's car could be found within a one mile area of the Tucson house *462 where the defendant had stayed. Evidence of this statement was not offered at trial.
Whitte returned to Tucson for four days, and then went to Las Vegas to bring the defendant to Arizona. The defendant had not yet been provided with counsel. As they prepared to leave, the defendant asked if the car had been found, and when informed that it had not, he offered to show Whitte where the car would be found on a Tucson map. Since the detective did not have a map with him, the defendant offered to take him to the car, which he did early the next day, 2 September.
Later that day, the defendant was given an initial appearance and bond was set at one million dollars. Still later, the detective was told that the defendant wished to speak to him. During this interview the defendant made further incriminating statements, including an admission of sexual contact with the victim, claiming it was consensual.

I

ADMISSION OF STATEMENTS ALLEGEDLY OBTAINED IN VIOLATION OF MIRANDA RIGHTS
At trial, Detective Whitte testified that the defendant had shown him where the victim's car was located, and repeated defendant's admission that there had been sexual contact with the victim. The defendant claims error, since the statements were obtained in violation of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny. We agree.
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court held that once a suspect invokes his right to counsel, prosecution claims of voluntary statements must be supported by a showing of a knowing, intelligent waiver of that right. Specifically, the court held that a valid waiver cannot be shown simply by demonstrating that the suspect responded to further police-initiated interrogation. The suspect must initiate any further conversations with the police. Id. at 485, 101 S.Ct. at 1885, 68 L.Ed.2d at 386. In the instant case, Detective Whitte continued to talk with the defendant after he invoked his right to counsel. In determining whether the products of such continued conversation are derived from impermissible police conduct, the United States Supreme Court has held:
[I]t may be said * * * that the respondent was subjected to "subtle compulsion." But that is not the end of the inquiry. It must also be established that a suspect's incriminating response was the product of words or action on the part of the police that they should have known were reasonably likely to elicit an incriminating response. Rhode Island v. Innis, 446 U.S. 291, 303, 100 S.Ct. 1682, 1691, 64 L.Ed.2d 297, 309 (1980). (footnote omitted.)
Here, Detective Whitte not only should have known that his continuous statements and questions would elicit an incriminating response, but it appears that actually was his intention. It is clear the defendant invoked his right to counsel and his right to remain silent, as the testimony of the officer indicates:
MS. KELLEY: Exactly what did he tell you when you started asking him his name?
D. WHITTE: He told me that he had already given that information, he didn't want to give it again. And then he told me that he didn't want to make any statements without a lawyer, or further talk to a lawyer. I'm not exactly sure how he put it one way or the other. * * *
MR. COUSER: Did you have the impression that he did not want to talk unless he had a lawyer with him?
D. WHITTE: I got the impression he did not want to talk to me about the case. That's correct.
Nevertheless, the officer continued to interrogate the defendant:
MR. COUSER: Okay. Did you tell him that the victim was having trouble with her insurance company and it sure would help if you could clear that up?

*463 D. WHITTE: I told him the victim was having trouble with the insurance company. They were pressuring her to settle. I would sure like to find the car, yes.
The officer wanted to know where the car was, and tried to use the defendant's concern for the victim to find out. We agree with the dissent written by Judge Hathaway of the Court of Appeals:
After appellant invoked his right to remain silent and his right to counsel, the detective in brazen disregard of restraints imposed by a veritable mountain of authority persisted in discussing the case with him, as the majority sets forth. Undoubtedly the opportunity extended appellant to cooperate and ingratiate himself to the authorities and to color himself a "good guy" was more effective in eliciting evidence than a rubber hose.
By implicating himself in the theft of the automobile, appellant "let the cat out of the bag." The subsequent incriminating statements naturally emanated from the first conversation and would not have occurred but for the initial police misconduct. (Hathaway, J., dissenting, at 918.)
The state claims, however, that even if the initial conversation was in violation of Miranda, supra, the statements admitted at trial were voluntary, since they were made four and five days later, after the taint of the earlier interrogation had been attenuated. During the intervening time, however, the defendant was not given the chance to speak with an attorney as he had requested. He had no idea that his earlier statements could be inadmissible at trial. He was therefore in the position of a man who had confessed and had nothing to lose by trying to help the police. The cat was out of the bag. There was nothing the defendant could do to get the cat back in the bag. See United States v. Bayer, 331 U.S. 532, 540, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654, 1660 (1947). Four days of sitting in a jail cell without the advice of counsel will not attenuate the effects of an involuntary confession. We believe the statements were improperly admitted at trial. State v. Spoon, 137 Ariz. 105, 669 P.2d 83 (1983); Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); Edwards v. Arizona, supra.
II
ADMISSION OF SUBSEQUENT ACTS
Defendant objects to the admission of evidence of his conduct with Ms. A in Phoenix and Ms. B in Lake Havasu City. He contends that the evidence of these "bad acts" is prejudicial error. We do not agree.
Evidence of subsequent conduct of the defendant is admissible under Rule 404(b) of the Arizona Rules of Evidence, 17A A.R.S. to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. In the present case the evidence was admitted to show a common scheme or plan. Under State v. Jackson, 124 Ariz. 202, 204, 603 P.2d 94, 96 (1979) the test for whether a subsequent act is admissible is whether there are similarities in important aspects of the act where differences would be expected. According to the testimony in this case, the defendant contacted female real estate agents, feigning an interest in purchasing property. In each case he arranged to meet with the victim in an isolated place, threatened the victim with a knife, and then sexually assaulted the victim. The striking similarity of each victim's testimony clearly shows a common plan or scheme. The evidence was properly admitted by the trial court. We find no error.
III
THE ADMISSION OF THE UMBRELLA AND THE KNIFE
The umbrella was found in the victim's car in September. It was evidently placed in a corner of Detective Whitte's office and not again noticed for nearly four months. Just before Christmas, another officer picked up the umbrella and opened it by pushing a button. When the umbrella did open, the knife fell out. From that *464 time forward, proper chain of custody was established. The defendant claims that since the umbrella remained unnoticed in an office for four months and several people had access to this office, tampering with the umbrella was possible. Therefore, the umbrella and the knife should not have been admitted into evidence. The knife, however, was identified at trial by the victim as the weapon used in the crime. The knife was also identified, by the person with whom the defendant stayed while in Tucson, as appearing to be one missing from his house. Foundation for evidence can be established by either chain of custody or identification testimony. State v. Macumber, 119 Ariz. 516, 521, 582 P.2d 162, 167 (1978). In the instant case, there was sufficient identification testimony to support the admission of the knife and the umbrella.
IV
ADMISSION OF SURPRISE TESTIMONY BY A DISCLOSED WITNESS
On the second day of trial, the prosecution announced that Ms. A from Phoenix, who was scheduled to testify that day, had stated the night before that contrary to her earlier story of escape from the defendant, she was indeed forced to submit to sexual abuse by the defendant. The defense counsel asserted surprise and asked that the witness not be permitted to so testify. The trial court allowed the defense counsel time to interview the witness, but did not grant a continuance as requested by defendant for preparation of witness impeachment evidence. Defendant contends that this constituted reversible error, violative of the defendant's right to a fair trial, and that a continuance should have been granted. We do not agree.
A motion to continue is not granted as a matter of right. Such motion will be granted only if in the discretion of the trial court circumstances exist making delay indispensible to the interests of justice. State v. Laffoon, 125 Ariz. 484, 485-86, 610 P.2d 1045, 1046-47 (1980). See also Rule 8.5(b), Arizona Rules of Criminal Procedure, 17 A.R.S. In the present case, the defense knew long before trial that Ms. A would testify. There is no indication that the prosecution was attempting to surprise the defendant. It appears that the prosecution was made aware of Ms. A's change of testimony the night before her actual testimony. The witness's name was on the pre-trial list of witnesses, and the defense was given a chance to interview her prior to her testimony. The case is similar to State v. Tresize, 127 Ariz. 571, 575, 623 P.2d 1, 5 (1981), where we allowed similar testimony, and held that the discretion of the trial court will only be overturned upon a showing of a clear abuse of discretion.
Defendant has shown no such circumstance here which would cause us to believe that the trial court abused its discretion in failing to grant a continuance. We note no prejudice to the defendant because of the failure to grant the continuance. We find no error.
V
IF THERE WAS ERROR, WAS IT HARMLESS?
Finding that there was error in the admission of defendant's testimony does not mean that the matter must be completely reversed as to the sexual assault and kidnapping. Without the testimony of Detective Whitte, the evidence against the defendant is still overwhelming. The victim had a chance to observe the defendant over a five-day period, and her identification of the defendant was clear. Two other witnesses testified to nearly identical, independent conduct by the defendant: there was physical (i.e. hair and semen samples) evidence, as well as identification of the knife by both the victim and the owner. In fact, although the defendant claimed that the contact was consensual, the only evidence of that fact comes from Detective Whitte's testimony concerning the defendant's claim. Even though it was error to admit the testimony of Detective Whitte concerning the statements of the defendant as to the conviction for kidnapping and sexual assault, *465 the error was harmless beyond a reasonable doubt and does not justify reversal, because the jury would have reached the same decision even without such evidence. See State v. McVay, 127 Ariz. 450, 453, 622 P.2d 9, 12 (1981); See also State v. Magby, 113 Ariz. 345, 353, 554 P.2d 1272, 1280 (1976); State v. Cabrera, 114 Ariz. 233, 236, 560 P.2d 417, 420 (1977).
We do not believe, however, that the evidence was harmless as to the charge of grand theft of the automobile. After the defendant locked the victim in the basement, he left with the keys to the car, but no one saw him drive away with the car. We would, on these facts alone, uphold a jury verdict of guilty of theft of the car, but we cannot say as a matter of law that a jury would so decide. The testimony concerning the location of the automobile, therefore, was not harmless beyond a reasonable doubt, and we must reverse the judgment and sentence for grand theft.
The convictions, judgments, and sentences for kidnapping and sexual assault are affirmed. The conviction, judgment, and sentence for grand theft is reversed.
HOLOHAN, C.J., GORDON, V.C.J., and HAYS, J., concur.
FELDMAN, Justice, specially concurring.
I concur in all portions of the opinion except part V, the section dealing with harmless error. Since the majority opinion indicates (in part I) that the improperly admitted confession was "involuntary," the error is constitutional. Therefore, I believe the court has used the improper test for ascertaining whether the error was harmless. The reasons for this are set forth in my dissenting opinion in State v. Adamson, 136 Ariz. 250, 665 P.2d 972 (1983).