804 P.2d 103

**The STATE of Arizona, Appellee,**

v.

**Payam KHOSHBIN, aka Payam Koshbin, aka David Reza Ghahary, Appellant.**

**No. 2 CA–CR 89–0505.**

Court of Appeals of Arizona, Division 2, Department B.

May 1, 1990.

Redesignated as an Opinion June 1, 1990.

Review Denied Feb. 5, 1991.[*]

---

[*] Gordon, C.J., and Feldman, V.C.J., of the Supreme Court, voted to grant review on Issue No. 4.

**571**

sponte giving a manslaughter instruction, 3) in allowing the state to make substantive use of a prior inconsistent statement of one of its own witnesses, 4) in admitting into evidence a gun recovered from the co-conspirator's home, and 5) in not granting appellant's motion for a directed verdict on the conspiracy charge. He also argues that the court improperly sentenced him to consecutive terms of imprisonment.

The evidence at trial, viewed in the light most favorable to sustaining the verdicts, is as follows. *State v. Zmich*, 160 Ariz. 108, 770 P.2d 776 (1989). Appellant was president of a corporation known as Tide Investment, Ltd. that purchased and sold real estate. The secretary of the corporation was Firooz Farahmandnia, a friend of appellant who had loaned appellant $50,000. Appellant repaid him $29,000, and Farahmandnia then gave him back $27,000.

The victim, Gabriel Agbo, a student from Nigeria, became a friend of appellant because they shared the same religion. A couple of months before Agbo was murdered, he became the property manager of Tide Investment even though he had no experience in real estate. In September 1986, appellant contacted insurance agent Steve Khodaii about purchasing life insurance for the corporate officers. Khodaii sold a $100,000 policy to Farahmandnia with appellant as the primary beneficiary and Agbo as the secondary beneficiary. Another $100,000 policy was sold to Agbo with Farahmandnia as the primary beneficiary and appellant as the secondary beneficiary. Farahmandnia paid for both policies. Khodaii testified that appellant conducted the negotiations for the policies.

Appellant arranged for a second meeting with Khodaii and Agbo on October 12, 1986, and appellant bought and paid for an additional $100,000 policy on Agbo as well as one on himself. Appellant and Farahmandnia also met with Khodaii on October 23, 1986, and Farahmandnia bought an additional policy on himself. At this meeting, appellant asked about adding accidental death coverage to all three policies and filled out the forms to have the accidental coverage added. If the two policies on

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Janet Keating, Phoenix, for appellee.

Jim D. Himelic, Tucson, for appellant.

## OPINION

FERNANDEZ, Chief Judge.

After a jury trial, the court sentenced appellant to two consecutive life sentences for the first-degree murder of and conspiracy to murder Gabriel Agbo.

Appellant's five contentions of reversible error on appeal are that the court erred 1) by refusing to suppress appellant's statements to the police made after appellant had consulted with his attorney and was told not to talk to the police, 2) in not sua

Agbo, including the accidental death coverage, had been in effect when Agbo died, they would have paid $350,000. The company refused to pay because the policies had not yet been produced at the time he died.

On the night of November 15, 1986, Agbo cancelled plans he had made to go out with a friend. He was seen with appellant that night at Eric's Ice Cream parlor. They left sometime between 11:30 p.m. and midnight. Appellant showed up at Farahmandnia's place between 2:00 and 3:30 a.m. on November 16. Later, Farahmandnia and appellant went to appellant's apartment.

Agbo's body was found about 9:00 a.m. on November 16 in the desert east of Tucson near Escalante and Houghton. The pathologist estimated that he had been shot between 11:00 p.m. November 15 and 3:00 to 4:00 a.m. on November 16. The pathologist testified that Agbo had been shot first in the chest and lived five to 15 minutes before he was then shot in the back of the head and died instantaneously. Both wounds were inflicted from a distance of two feet or more. There were no drugs or alcohol in his blood. There was no sign of a struggle, and no weapon was found at the scene.

Appellant spoke to Khodaii about the insurance proceeds in the late evening of November 16. He later consulted with at least two attorneys about collecting the insurance. Appellant told a friend that he had taken out a life insurance policy on three different people, and he thought it was "really neat" and "kind of interesting" that one of them had died. Appellant told the friend he had worked it out so the man who died was working for appellant's company. Appellant also told his friend that the man who had died was a "low life type of guy" who had a lot of problems.

Another friend of appellant's initially told police that appellant told him he had hired an ex-cop from Miami to kill the African student. At trial, the friend denied that appellant had said that and testified that he had only inferred that from what appellant had told him.

Appellant told police that Joe Carey, an ex-police officer from Miami, Florida had killed Agbo using a .38 caliber gun and that after Agbo died, Carey bribed appellant to give him $12,500. The police obtained a search warrant for Carey's house and found a .38 caliber gun there. The inside of the barrel had been damaged so the criminalist was unable to positively say that the bullets taken from Agbo's body were fired from that gun.

Appellant had at one time asked the insurance agent about the effect of suicide on the policies. Appellant told the agent that Agbo was depressed. After Agbo was murdered, appellant told two friends that Agbo had wanted to die. Agbo told a couple of friends that the insurance proceeds would be sent to his family, if anything happened to him. The evidence showed that appellant's financial situation was bad in the fall of 1986. Both his bank account balances were very low, he was delinquent on a number of bills, and he had a large number of checks that were returned for insufficient funds.

### APPELLANT'S STATEMENTS TO THE POLICE

 After murder charges were filed against appellant, the police learned that he was living in Montreal, Canada. Two Tucson detectives went to Montreal, and on August 28, 1987, Montreal police arrested appellant and advised him of his Canadian rights. Neither of the Tucson detectives ever read the standard *Miranda* rights to appellant. At the police station, Detective Petropoulos called the Tucson law office of appellant's attorney, Lamar Couser, and was advised that Couser was out to lunch. Both officers testified at the suppression hearing that appellant then agreed to give the officers a formal tape-recorded statement. Petropoulos testified that after the statement was made, he again called appellant's attorney's office in Tucson, and this time appellant spoke to Couser. Couser advised him to waive extradition and not to talk to the detectives anymore. Appellant testified at the hearing that he did not tell the police anything further. Both detec-

tives testified that after appellant spoke to Couser, he told them there were some things he had not told them because he wanted to discuss them with his attorney first.

The next day appellant and the two detectives flew back to Tucson. During the trip, appellant volunteered statements to the detectives, saying he wanted to make a deal and implicating Carey in Agbo's killing. Because of an unrelated drug conviction on which he had been tried in absentia while he was in Canada, appellant was frightened that he would be deported to Iran. Appellant denied that he made any statement about the case on the airplane.

The trial court suppressed appellant's tape-recorded statement because no *Miranda* warnings had been given but found that the statements given on the airplane were volunteered. Appellant contends that those statements should also have been suppressed, citing *State v. Ashelman*, 137 Ariz. 460, 671 P.2d 901 (1983) and *State v. King*, 140 Ariz. 602, 684 P.2d 174 (App. 1984). The state contends that "an accused's spontaneous, voluntary statement that is not made in response to police interrogation does not violate the defendant's *Miranda* rights," quoting *State v. Carter*, 145 Ariz. 101, 106, 700 P.2d 488, 493 (1985).

The trial court found that appellant had consulted with an attorney and had been told not to talk further to the police, he volunteered his statements to the police, and the police did not instigate any questioning of appellant on the airplane. The testimony was that appellant talked throughout the trip. Petropoulos testified that he repeatedly told appellant they could not make any deals with him. Appellant continued talking even after Detective Petropoulos told him he did not want to listen and after the detective tried to read a book.

In *State v. Ashelman, supra,* the defendant invoked his right to counsel, but no counsel was provided, and the police continued to question him. Four days later, defendant, still without counsel, spoke to the police while he was being transported from Las Vegas to Phoenix. The court held:

'By implicating himself in the theft of the automobile, appellant "let the cat out of the bag." The subsequent incriminating statements naturally emanated from the first conversation and would not have occurred but for the initial police misconduct.'

137 Ariz. at 464, 671 P.2d at 905, quoting the dissent in the Court of Appeals decision, 137 Ariz. 471, 477, 671 P.2d 912, 918.

In *State v. King, supra,* this court affirmed the trial court's suppression of statements made after a defendant asked to speak to his attorney but was unable to because the attorney was out of town. The court applied the "cat out of the bag" rule in suppressing the statements.

Here, appellant was afforded the opportunity and did speak to an attorney who advised him not to talk to the police. Whether a second statement is the fruit of an earlier inadmissible statement is a question of fact for the trial court. *State v. Ferreira*, 152 Ariz. 289, 731 P.2d 1233 (App.1986). A reviewing court views the facts in the light most favorable to the trial court's ruling on a motion to suppress, and that ruling will not be disturbed on appeal absent clear and manifest error. *State v. Gerlaugh*, 134 Ariz. 164, 654 P.2d 800 (1982). We agree that appellant's statements to the detectives on the return flight were volunteered.

## MANSLAUGHTER INSTRUCTION

■ Appellant did not request an instruction on manslaughter. On appeal, he contends fundamental error occurred, and the court sua sponte should have given an instruction that a person can commit manslaughter by intentionally aiding another to commit suicide. A.R.S. § 13–1103(A)(3).

Manslaughter by aiding a suicide is not, however, a lesser-included offense of first-degree murder. *See State v. Celaya*, 135 Ariz. 248, 660 P.2d 849 (1983). Appellant argues that the evidence supports the giving of the instruction. We disagree. Appellant did not claim he gave the victim $2,000 to commit suicide. In fact, appellant established that there was no evidence to show he had $2,000 to give anyone and

emphasized that fact in closing argument. In addition, there was no evidence from Agbo's friends that he was suicidal at the time he died, and there was no evidence that he killed himself. We find no fundamental error.

## SUBSTANTIVE USE OF PRIOR INCONSISTENT STATEMENT OF STATE'S WITNESS

■ Appellant contends the court erred in allowing the state to introduce substantive evidence under the guise of impeaching its witness with a prior inconsistent statement. David Ghahary, a close friend and former roommate of appellant's, spoke to police, telling them that appellant had said he was involved in the killing of a black student from Africa. Ghahary also told the police that, without a doubt, appellant had said that he had hired an ex-cop from Miami to kill the African student. During a later interview with the prosecutor and the defense attorney, Ghahary also said that appellant had said he had hired an ex-cop from Miami. At trial on direct examination, Ghahary testified that appellant did not say that he had hired the ex-cop from Miami but that Ghahary had inferred that from what appellant had said. The state then impeached the witness with his two prior inconsistent statements that had been tape recorded and transcribed. Appellant did not object.

Appellant contends that under the guise of impeaching Ghahary, the state was able to enter into evidence the only substantive evidence it had on appellant's admission that he had hired an ex-police officer from Miami to kill Agbo.

A prior inconsistent statement by a witness subject to cross-examination concerning the statement is not hearsay. Rule 801(d)(1)(A), Ariz.R.Evid., 17A A.R.S. A statement otherwise admissible under Evidence Rule 801(d)(1)(A), however, should be excluded under Evidence Rule 403 if its probative value is substantially outweighed by the danger of prejudice, confusion or misleading the jury. *State v. Allred*, 134 Ariz. 274, 655 P.2d 1326 (1982). The supreme court in that case listed the following five factors to be considered in assessing the danger of unfair prejudice:

1) the witness being impeached denies making the impeaching statement, and

2) the witness presenting the impeaching statement has an interest in the proceeding and there is no other corroboration that the statement was made, or

3) there are other factors affecting the reliability of the impeaching witness, such as age or mental capacity, ...

4) the true purpose of the offer is substantive use of the statement rather than impeachment of the witness,

5) the impeachment testimony is the only evidence of guilt.

134 Ariz. at 277, 655 P.2d at 1329.

Here, Ghahary admitted making the prior statements, and the statements were tape-recorded. The statements were made to the police and to the prosecutor and the defense attorney. The purpose of the offer was the substantive use of the statement. The impeachment testimony was not the only evidence of appellant's guilt. Considering all the factors, we find no error. *State v. Allred, supra; State v. Beck*, 151 Ariz. 130, 726 P.2d 227 (App.1986).

## ADMISSION INTO EVIDENCE OF PISTOL

■ Appellant contends that the court erred in denying his motion to preclude admission into evidence of the .38 caliber pistol that was found at Joe Carey's house, arguing that there was insufficient evidence to connect the weapon with the crime. The victim was killed by two gunshots from a .38 caliber gun. Appellant told police that Carey killed the victim with a .38 caliber gun. The police, pursuant to a search warrant, recovered a .38 caliber gun from Carey's home. One bullet recovered from Agbo was too badly damaged to be tested. Ballistics showed that the general rifling characteristics of the other bullet were consistent with those of the gun recovered from Carey's home. A positive identification could not be made, however, because the inside of Carey's gun had been damaged.

Rule 401, Ariz.R.Evid., 17A A.R.S., provides:

'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

"[T]he lack of positive identification goes only to the weight and not the admissibility of the evidence." *State v. Skelton*, 129 Ariz. 181, 183, 629 P.2d 1017, 1019 (App. 1981); *see also State v. Blazak*, 114 Ariz. 199, 560 P.2d 54 (1977). A court's ruling on a motion to admit or exclude evidence will not be reversed on appeal absent a finding of an abuse of discretion. *State v. Stotts*, 144 Ariz. 72, 695 P.2d 1110 (1985). We find no error.

### DENIAL OF MOTION TO DISMISS CONSPIRACY COUNT

■ Appellant argues that the court erred in denying his pretrial motion to dismiss the conspiracy count and his subsequent motion for acquittal on that count pursuant to Rule 20, Ariz.R.Crim.P., 17 A.R.S. The basis for his motions was that the only evidence of conspiracy was appellant's own admissions. Appellant argues that he cannot be convicted without independent evidence, noting that the charges against Carey were dropped for lack of evidence.

Our review of the evidence reveals a reasonable inference of the corpus delicti. The court properly denied the motions. *State v. Gillies*, 135 Ariz. 500, 662 P.2d 1007 (1983), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985); *State v. Gerlaugh, supra.*

### PROPRIETY OF CONSECUTIVE SENTENCES

■ Appellant first claims that the consecutive sentences imposed were improper because the court "placed no reasons on the record for the imposition of the consecutive sentences." We disagree. The transcript of the sentencing hearing contains the court's explanation of why it imposed consecutive sentences.

Secondly, appellant contends that the consecutive sentences constitute double punishment for the same acts, arguing that the acts for conspiracy merged into the first-degree murder count. The Arizona statute prohibiting double punishment provides as follows:

An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other, to the extent the constitution of the United States or of this state require.

A.R.S. § 13–116.

Our supreme court recently affirmed the use of the identical elements test to determine whether the evidence shows a single act, which requires concurrent sentences, or multiple acts, which permit consecutive sentences. *State v. Gordon*, 161 Ariz. 308, 778 P.2d 1204 (1989). The identical elements test allows consecutive sentences for conspiracy and substantive crimes because the acts required for a completed conspiracy are separate from those required for the substantive crimes. *State v. Olea*, 139 Ariz. 280, 678 P.2d 465 (App.1983); *State v. Verive*, 128 Ariz. 570, 627 P.2d 721 (App. 1981). Here, the crimes were separate and distinct and occurred at different times. We find no error in the imposition of consecutive sentences.

Affirmed.

LIVERMORE, P.J., and LACAGNINA, J., concur.