NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

VERNON H., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, E.H., *Appellees.*

No. 1 CA-JV 19-0040
FILED 10-27-2020

Appeal from the Superior Court in Maricopa County
No. JD30552
The Honorable Jeanne M. Garcia, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Doriane F. Neaverth
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Maurice Portley[1] joined.

---

**W I N T H R O P**, Judge:

¶1        Vernon H. ("Father") appeals the juvenile court's order terminating his parental rights to E.H.  Father argues the Department of Child Safety ("DCS") failed to meet its burden of proof as to the grounds for termination.  Father also contends that, by ignoring his relationship with E.H., the juvenile court erred in finding that severance was in the child's best interests.  In addition, Father argues the court abused its discretion in declining to grant a continuance when Father failed to appear for the final day of the severance hearing.  For the following reasons, we affirm.

**FACTS[2] AND PROCEDURAL HISTORY**

¶2        In March 2015, DCS received a report that E.H., then six years old, had witnessed a domestic violence dispute between Father and his then-girlfriend ("Girlfriend").  After the incident, Father represented that Girlfriend had moved out, and E.H. was allowed to remain in Father's home.  However, just two months later, Girlfriend attempted suicide while E.H. was present.  Father then allowed E.H. to ride in the ambulance with Girlfriend and to remain in Girlfriend's hospital room while Girlfriend was yelling about wanting to hurt herself.  Just a few days later, Father allowed E.H. to ride alone in a vehicle with Girlfriend, who was driving while intoxicated and collided with another car.  Girlfriend and E.H. were taken to the hospital; Girlfriend's blood alcohol level measured over three times the legal limit.  DCS assumed custody of E.H. at the hospital.

---

[1]        The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2]        We review the facts and reasonable inferences therefrom in the light most favorable to affirming the juvenile court's order.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

¶3          Following these incidents, DCS filed a dependency petition, alleging Father had neglected E.H. by failing to protect E.H. from Girlfriend's substance abuse, mental health episodes, and acts of domestic violence. The court adjudicated E.H. dependent after Father failed to appear for the dependency hearing in August 2015.

¶4          DCS offered services to Father to facilitate reunification with E.H., including parenting classes with a domestic violence component, parent aide services, transportation services, psychological evaluations, and counseling services. In the following months, Father made some progress with his services, completing multiple parenting classes, an outpatient domestic violence counseling program, and a psychological evaluation. However, Father did not consistently attend his individual counseling and was closed out from counseling on multiple occasions because of his lack of participation.

¶5          The court conducted a severance hearing in May 2017. The court declined to terminate Father's parental rights, noting difficulties caused by the high turnover of case managers (seven case managers over a two-year period), which resulted in lapses in communication with DCS. The court also recognized that Father consistently had positive visits with E.H. and had completed a domestic violence program and parenting classes. The court stated that the only service Father had not completed was individual counseling, but the court was "optimistic that Father [would] successfully complete his individual counseling" and be able to exercise proper and effective parental care and control in the near future. The court also found there was a "strong bond" between Father and E.H. The court then reinstated the case plan of family reunification and specifically cautioned Father to "complete his individual counseling expeditiously."

¶6          In the following months, Father did not comply with the court's directive, failing to participate on numerous occasions in scheduled counseling services, and was therefore closed out of such services by multiple providers. DCS also became concerned that Father was experiencing substance abuse issues or mental health problems. The court ordered Father to submit a hair follicle drug test and DCS referred Father for another psychological evaluation, but Father did not complete either the test or evaluation. Thus, the court changed the case plan to severance and adoption.

¶7          During the same time, Father also missed around half of his scheduled visits with E.H.—now nine years old—and she began exhibiting

escalating negative behaviors. Because of this, a psychologist who evaluated E.H. directed that the previously-recommended visits with Father be suspended until E.H. and Father's negative behaviors stabilized, Father completed the court-ordered hair follicle drug test, and E.H. could be evaluated for additional services. Accordingly, DCS moved to suspend Father's visitation in November 2018 and the court granted the motion.

¶8 A second severance hearing was held in November and December 2018. Father did not appear for the last day of the hearing. The court granted Father's counsel's request to take a thirty-minute recess to wait for Father but, after that time expired, declined to further continue the hearing. The court did not enter any form of default against Father based on his nonappearance, but did allow closing arguments to proceed in Father's absence.[3]

¶9 The court took the matter under advisement, and issued a final ruling on February 1, 2019, terminating Father's parental rights to E.H. based on the fifteen-month time-in-care ground pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(c). The court also found E.H. was in an adoptive placement and severance was in her best interests. Father timely appealed the order.

¶10 Two months after Father filed his notice of appeal, however, a case manager reported to the Foster Care Review Board that E.H. was not in an adoptive placement, was "demonstrating sexualized behaviors," "inappropriately touched another child in the home," and was working with a therapist "to address trauma she has experienced." As a result of this information, Father argued in his opening brief that the case should be remanded for an evidentiary hearing as to the circumstances of any abuse and E.H.'s best interests, noting that the court and DCS had rejected Father's previous concerns that E.H. was being sexually abused while in DCS care.[4]

---

[3] About six weeks after the severance hearing concluded, Father filed a letter with the court seeking to explain his absence. The court declined to consider Father's *ex parte* communication and encouraged Father to "contact his counsel to file a properly supported and served Motion on all parties." No such motion was ever filed.

[4] During the 2018 severance hearing, Father's counsel informed the court that Father believed E.H. had been sexually abused while in DCS care,

¶11        A previous panel of this Court considered the parties' briefs, noted that the Foster Care Review Board report was contrary to the juvenile court findings relied on in terminating Father's parental rights, and issued an order staying the appeal and re-vesting jurisdiction in the juvenile court to determine whether E.H. was still adoptable and whether severance was in E.H.'s best interests.

¶12        In March 2020, the juvenile court held an evidentiary hearing to reevaluate its best-interests determination. At the hearing, a DCS adoption specialist testified that although E.H. had not actually been in an adoptive placement when the termination order was issued, E.H. was currently in an adoptive placement and was an adoptable child. Following completion of the hearing, the court affirmed the previous best-interests finding, stating that even if E.H. had not been in an adoptive placement at the time of severance, the court had consistently noted that she was an otherwise adoptable child. The court then issued new findings of fact and conclusions of law on March 25, 2020.

¶13        Father filed a second notice of appeal.[5] We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(2).

**ANALYSIS**

I.        *Standard of Review*

¶14        Parents have a fundamental liberty interest in the care, custody, and management of their children. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). A court may sever parental rights if it finds clear and convincing evidence of one of the statutory grounds for severance and finds, by a preponderance of the evidence, that severance is in the child's best interests. *See* A.R.S. §§ 8-533(B), -537(B); *Kent K.*, 210 Ariz. at 281-82, 288, ¶¶ 7, 41.

_____

a program supervisor testified that Father had previously filed a report with DCS to report the abuse, and Father testified that he believed E.H. had been sexually abused.

[5]        The superior court granted Father's request to file an untimely second notice of appeal, based on the unique procedural history of the case and Father's reliance on this Court's prior representation that the appeal would be "automatically reinstated." Accordingly, this Court reinstated Father's appeal and allowed the parties to file supplemental briefs.

¶15 We review the juvenile court's order severing a parent's rights for an abuse of discretion, and we will not disturb the court's order unless no reasonable evidence supports its factual findings. *E.R. v. Ariz. Dep't of Child Safety*, 237 Ariz. 56, 58, ¶ 9 (App. 2015); *Matthew L.*, 223 Ariz. at 549, ¶ 7. As the trier of fact in a termination proceeding, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)). We will not reweigh the evidence on appeal. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002).

> II. *Severance Pursuant to A.R.S. § 8-533(B)(8)(c)*

¶16 Father argues severance pursuant to A.R.S. § 8-533(B)(8)(c) was improper because he had remedied the circumstances that caused E.H. to be in an out-of-home placement—to wit, his failure to protect E.H. from Girlfriend—by ending his relationship with Girlfriend around three years prior to the 2018 severance hearing.

¶17 The juvenile court may terminate parental rights pursuant to A.R.S. § 8-533(B)(8)(c) if DCS has made diligent efforts to provide reunification services, the child has been in an out-of-home placement for fifteen months or longer, and "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future."

¶18 Unlike the shorter time-in-care grounds that require the parent to have "substantially neglected or wilfully refused" to remedy the circumstances causing the child to be in an out-of-home placement, the fifteen-month ground requires only that the parent has been "unable to remedy the circumstances." *Compare* A.R.S. § 8-533(B)(8)(a), *with* (B)(8)(c).

¶19 Here, Father does not dispute that E.H. has been in DCS care for approximately five years, nor does he challenge the experts' opinions as to the therapies needed as a prerequisite to reunification or the adequacy of services he was offered. Over the years, Father has engaged in and completed multiple services, including parenting classes and parent aide services. However, Father's participation in individual counseling has been inconsistent and, ultimately, noncompliant. Although Father's therapy records from 2017-2018 with counselor Brian Colwell intermittently indicate Father was engaged and making some progress in counseling

sessions, the fact remains that Father never successfully completed his individual counseling, despite the court declining to sever Father's rights in 2017 and instead explicitly granting him additional time and directing he use that time to finish his individual counseling. Father also refused to complete the court-ordered hair follicle drug test or additional psychological evaluations to assuage DCS's ongoing concerns about his erratic and aggressive behaviors.[6]

**¶20** While Father may have ended his relationship with Girlfriend, reasonable evidence supports the juvenile court's conclusion that Father still had not remedied the circumstances that brough E.H. into DCS care because Father—despite express direction from the court on multiple occasions—never obtained a "professional's opinion that he [could now] protect his daughter from the hazards of a dysfunctional relationship." In addition, the juvenile court did not abuse its discretion in finding there was a substantial likelihood that Father would not be able to exercise effective parental control in the near future. Father repeatedly exhibited erratic or hostile behaviors in front of E.H. As noted previously, Father also failed to complete necessary individual counseling despite being given years to do so, and there was no reason to believe Father would timely complete such counseling even if granted additional time. *See Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (holding a parent's window of opportunity for remediation need not remain open indefinitely).

### III. *Best Interests of the Child*

**¶21** Father also argues the court erred in concluding severance was in E.H.'s best interests because he and E.H. had a strong bond and he never posed any risk of harm to E.H. He contends the only evidence of any

---

[6] Father contends the juvenile court's order cited reasons for severance that were never alleged in the original dependency petition, such as Father's substance abuse and mental health issues. But Father's potential substance abuse or mental health issues were not cited as additional grounds for termination, but as ongoing circumstances requiring extension of E.H.'s out-of-home placement. Although Father's substance abuse or mental health issues were not explicitly referred to in the initial dependency petition, "circumstances" under A.R.S. § 8-533(B)(8) includes circumstances "existing at the time of the severance." *See Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007).

deterioration of his bond with E.H. came from the DCS case manager and contradicted a bonding assessment conducted in 2017.

**¶22** The best interests of the child "are a necessary, but not exclusively sufficient, condition for an order of termination." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). The juvenile court must balance the parent's interest in the care and custody of the child "against the independent and often adverse interests of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35. The best-interests inquiry must also "include a finding as to how the child would benefit from a severance or be harmed by continuation of the [parent-child] relationship." *JS-500274*, 167 Ariz. at 5.

**¶23** Here, the juvenile court noted that the previously-strong bond between Father and E.H. had eroded because of Father's lack of consistent visits and his erratic behaviors in E.H.'s presence. This conclusion was supported by the case manager's testimony, and we will not reweigh the evidence on appeal nor reevaluate the credibility of witnesses. *See Jesus M.*, 203 Ariz. at 282, ¶ 12. Moreover, other reasonable evidence supports the court's best-interests determination. After the March 2020 hearing, the court confirmed that E.H. was in an adoptive placement that was meeting all of her needs, including her behavioral needs. The court found that the placement had provided E.H. with necessary structure and that E.H.'s previous behaviors were under control. In addition, termination would further the case plan of adoption: the placement intends to adopt E.H., which would grant her the stability and permanency she has been lacking for the past five years. *See Oscar O.*, 209 Ariz. at 334, ¶ 6. Accordingly, reasonable evidence supports the juvenile court's finding that termination of Father's parental rights was in E.H.'s best interests.

### IV. Denial of Request for Continuance

**¶24** Father also argues the court abused its discretion in declining to grant a further continuance when Father failed to appear on the final day of the 2018 severance hearing, despite Father's otherwise long history of participation in relevant court proceedings.

**¶25** "The grant or denial of a continuance is reviewed only for an abuse of discretion." *In re Maricopa Cnty. Super. Ct. No. MH2003-000240*, 206 Ariz. 367, 369, ¶ 10 (App. 2003). "A motion to continue is not granted as a matter of right. Such motion will be granted only if in the discretion of the trial court circumstances exist making delay indispensible [sic] to the interests of justice." *State v. Ashelman*, 137 Ariz. 460, 465 (1983).

**¶26**        Here, there is no indication Father was prejudiced by the refusal to grant a further continuance before proceeding to complete the hearing.  The court did not default Father nor find he waived his right to have his counsel present evidence or argument.  Father had the opportunity to present his case and cross-examine witnesses on the previous days of the hearing.  The only testimony remaining for the final day was, according to Father's counsel, "maybe ten more minutes" of direct examination of Father and then cross-examination of Father.  If anything, the inability to cross-examine Father prejudiced DCS more than Father.  The court heard only the closing arguments of counsel on the last day.  Moreover, despite being invited to do so, Father never later filed a motion to reopen documenting good cause for his absence, *see supra* note 3.  *See* Ariz. R.P. Juv. Ct. 46(F) ("Motions to continue shall be granted only upon a showing of good cause.").  On this record, we cannot say the juvenile court abused its discretion in refusing to grant a continuance.  *See In re Pima Cnty. Juv. Severance Action No. S-2462*, 162 Ariz. 536, 538 (App. 1989) (explaining that in considering a motion to continue, the court recognizes that the child's "best interests are at risk" and "require expedient consideration").

## CONCLUSION

**¶27**        For the foregoing reasons, we affirm the juvenile court's order terminating Father's parental rights to E.H.



AMY M. WOOD • Clerk of the Court
FILED:    AA